WARREN NELSON, a Minor, by Linda L. Tatum, his Mother and Next Friend, Plaintiffs-Appellants, *v.* COMMONWEALTH EDISON COMPANY *et al.*, Defendants-Appellees.

Second District   No. 83—370

Opinion filed May 4, 1984.

Gregory E. Barrett, of Schlueter, Ecklund, Olson, Barrett & Moore, of

Rockford, for appellants.

Kristine A. Karlin, Jay S. Judge, and Thomas G. Leavy, all of Judge & Knight, Ltd., of Park Ridge, for appellees.

JUSTICE VAN DEUSEN delivered the opinion of the court:

On October 14, 1981, Warren Nelson, a 10-year-old boy, was playing in Sabrooke Playground in Rockford, Illinois. High voltage electrical power lines run in an east-west direction over the middle of the park and are at least 30 feet high. The park land is owned by Commonwealth Edison but leased and controlled by the Rockford Park District. Young Nelson, either by himself or with a playmate, apparently had discovered a piece or spool of copper wire and one of the youths tossed it high into the air while Nelson held on to one end of the wire. An electric current either arced from nearby power lines to the copper wire or the wire actually contacted the power lines, causing plaintiff to receive serious electrical burns.

Linda Tatum, mother and next friend of Warren Nelson, filed a five-count complaint predicated upon theories of negligence, strict liability, and wilful and wanton misconduct. Count I was premised upon negligence and directed at Commonwealth Edison. It alleged, in addition to the foregoing facts which we have set forth, that the defendants knew that children habitually frequented the Sabrooke Playground, that the park was directly underneath electrical power transmission lines, and that said power lines over the Sabrooke Playground constituted a dangerous condition. It further alleged that defendants knew or should have known that a young child such as the plaintiff would not appreciate the dangers of the said power lines, and it was the duty of the defendants to remedy the described dangerous conditions or to otherwise take any necessary steps to protect children from injury that might result therefrom. Count I further alleged that the cost of providing warning signs was slight when compared to the risk of injury to young children. The count also included charges, *inter alia*, that Edison was negligent in failing to warn plaintiff of the dangers of the nearby electrical lines, failing to properly insulate those particular lines to prevent arcing of electrical current, failing to maintain the power lines in a good and safe condition, and in permitting a public park to exist under such dangerous wires. Count II was directed against the park district and made overlapping allegations of negligence.

Count III advanced a strict liability in tort claim against Edison, alleging that the power company's electricity and its lines were defec-

tive and unreasonably dangerous in certain designated respects, and that as a direct and proximate result of the condition of the electricity in the power lines, plaintiff was injured. Counts IV and V alleged wanton and wilful misconduct on the part of both Edison and the park district.

Defendants filed a motion to strike and dismiss plaintiff's complaint and plaintiff responded. A hearing was held on January 13, 1983, and resulted in the granting of defendants' motion to dismiss with prejudice all five counts of plaintiff's complaint. At the hearing, it was stipulated that the transmission lines were at least 30 feet above the ground.

Plaintiff thereafter filed a motion for leave to file an amended complaint, attaching a copy of a proposed amended pleading thereto. Counts I and II of the proposed amended complaint contained the additional allegation that at the time in question the minor plaintiff, together with another boy of approximately the same age, was playing with a metal spool wrapped with a very long length of bare copper wire of approximately one pound in weight. They were unraveling the copper wire from the spool by taking turns throwing the spool into the air while plaintiff held the copper wire with one hand. It further alleged that the power transmission lines carried approximately 69,000 volts of electrical current and were located approximately 30 feet from the ground. In amended count III, plaintiff abandoned her theory based upon strict liability in tort and sought to hold the utility company liable on the grounds that the maintenance of high voltage wires through a public playground constituted an inherently dangerous enterprise for which Edison was absolutely liable. Noting that the amended complaint still failed to state a cause of action, the trial court denied the motion. The instant appeal followed that ruling.

On appeal plaintiff first contends that the trial court erred in holding that counts I and II of his amended complaint failed to state a cause of action. The trial judge's dismissal was based upon his conclusion that, as a matter of law, it was not reasonably foreseeable that a child would throw a heavy copper wire spool close enough to the park's elevated power lines to cause injury. Because the occurrence itself was unforeseeable, the defendants had not assumed the type of unreasonable risk for which liability would attach. Plaintiff first argues that Illinois courts have regarded foreseeability solely as a factual issue to be determined by the jury as part of its proximate cause decision. The factor of foreseeability is an appropriate consideration for a court only as a means of precluding liability where the injury was too remote, a result of an intervening cause, or not reasonably

anticipated by the ordinary person. (See *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74; *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366.) Since the facts of the instant case were not so extreme that a jury could never conclude that the consequences were reasonably foreseeable, the plaintiff reasons that the judge exceeded his authority by dismissing plaintiff's complaint as a matter of law. See *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 13.

Plaintiff also maintains that the trial judge's analysis of the merits of the foreseeability issue was faulty. He urges that the trial court misunderstood the requirements of proximate cause by finding that it was necessary that the exact method or precise manner in which the injury occurred be reasonably foreseeable.

A review of the record does confirm that in dismissing counts I and II of the complaint, the trial judge stated in substance that where property was set aside as a public playground the park district and the utility company would be held to recognize that certain rights for children exist in the use of the premises that are far greater than would be permitted in other areas not so set aside, and that under the pleadings it would be reasonably foreseeable that a child might do something that would involve activity off the ground such as flying a kite or model aircraft tethered with a control wire, without appreciating the danger of such activity. The trial court concluded, however, that throwing a wire in the air was not like throwing a football or baseball, and found that it was not reasonably foreseeable that a child of relatively tender years would throw a wire 30 feet or more in the air. On this basis, the judge dismissed counts I and II of the complaint as not stating causes of action.

In dismissing the plaintiff's complaint, the trial judge obviously focused upon the particular manner in which the plaintiff was injured. However, plaintiffs argue that the "foreseeability" requirement does not refer to the method of injury. (*Blue v. St. Claire Country Club* (1955), 7 Ill. 2d 359, 364; *Del Raso v. Elgin, Joliet & Eastern Ry. Co.* (1967), 84 Ill. App. 2d 344, 362; *Ray v. Cock Robin, Inc.* (1973), 10 Ill. App. 3d 276, 285, *aff'd* (1974), 57 Ill. 2d 19; *Fugate v. Sears, Roebuck & Co.* (1973), 12 Ill. App. 3d 656, 669; Restatement (Second) of Torts sec. 435(1) (1965).) Plaintiff argues that as long as the resulting event was foreseeable, the manner in which it occurred was irrelevant. The trial judge was consequently mistaken in considering the particular means by which the plaintiff was injured, even under the guise of making a foreseeability determination.

Defendants' counterargument consists of an assertion that foreseeability is an element of the court's duty determination as well as

an element of the jury's proximate cause decision. (*Ortiz v. City of Chicago* (1979), 79 Ill. App. 3d 902, 907.) According to the defendants, when the trial judge concluded that plaintiff's injury was not reasonably foreseeable, he had properly determined, as a matter of law, that defendants owed no duty to protect plaintiff from such an unusual occurrence. (See *Cunis v. Brennan* (1974), 56 Ill. 2d 372; *Mieher v. Brown* (1973), 54 Ill. 2d 539; Restatement (Second) of Torts sec. 435(2) (1965).) And when the issue is expressed in terms of duty rather than proximate cause, attention should be focused on the nature and limits of defendants' obligations rather than on a chain of events, which beg to be confused with actual cause. (*Newmark v. Hartman* (1982), 109 Ill. App. 3d 379, 382.) Thus, the defendants conclude that the court's determination of the existence and scope of defendants' duty to plaintiff, that is, whether the parties stood in such a relationship to another that the law imposed a duty upon one for the other's benefit, was a legal issue appropriately resolved by the court. *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374; *Mieher v. Brown* (1973), 54 Ill. 2d 539, 541.

The parties' divergent views regarding the proper role of "foreseeability" in negligence claims is understandable considering the somewhat contradictory precedent on this issue. More recent precedent, however, indicates that Illinois courts have become willing to treat "foreseeability" as a factor in both the court's duty determination and the jury's proximate cause determination. (*Bloomingdale State Bank v. Capitol Bank* (1983), 116 Ill. App. 3d 132, 134; *Ortiz v. City of Chicago* (1979), 79 Ill. App. 3d 902, 907; *Laflin v. Estate of Mills* (1977), 53 Ill. App. 3d 29, 33.) Consequently, the defendants' contention that "foreseeability" is solely a consideration in the jury's proximate cause analysis is incorrect. See *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375; *Barnes v. Washington* (1973), 56 Ill. 2d 22, 29; *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 375.

Despite these more recent cases, the appropriate role to be played by this "foreseeability" factor, especially in the context of the court's duty determination, is still not entirely clear. Perhaps the most disruptive influence on what the appellate courts have perceived as guiding precedent has been the supreme court's opinion in *Cunis v. Brennan* (1974), 56 Ill. 2d 372. In *Cunis*, an automobile collision threw plaintiff, a passenger in a car, 30 feet onto a public parkway, where his leg was impaled by a municipal drain pipe. The court dismissed plaintiff's complaint on the basis that he had failed to establish that the defendant was under a duty to guard against such an unforeseeable occurrence. In so ruling, the court assimilated the factor of "rea-

sonable foreseeability" into its determination of legal duty, thereby permitting courts to dismiss, as a matter of law, negligence complaints arising out of occurrences which were "freakish or fantastic" or "tragically bizarre." See also *Mieher v. Brown* (1973), 54 Ill. 2d 539; *Barnes v. Washington* (1973), 56 Ill. 2d 22.

From an analytical perspective, the *Cunis* decision seems to meld into one what had previously appeared to be two distinct problems in negligence theory—the unforeseen plaintiff problem and the problem of the foreseeable injury resulting from unforeseen means. The Illinois Supreme Court began its opinion by relying primarily upon the time-honored case of *Palsgraf v. Long Island R.R. Co.* (1928), 248 N.Y. 449, 162 N.E. 99, in which Justice Cardozo eloquently devised a formula for imposing a limitation of foreseeability upon the particular persons to whom a defendant owed a duty of care. The *Cunis* court proceeded to use the *Palsgraf* reasoning to limit the defendant's liability to the particular plaintiff because of the manner in which that plaintiff was injured. As Justice Goldenhersh observed in his dissenting opinion, if the same plaintiff had been injured by the city drainpipe while walking along the parkway, he would have had a valid negligence claim since a municipality clearly owes a duty to exercise reasonable care in maintaining its parkways for use by a class of persons who themselves demonstrate ordinary care; it was only the bizarre manner in which plaintiff was injured which made his harm "unforeseeable." Thus, in a sense, the injured party in *Cunis* was treated like an unforeseeable plaintiff because of the unforeseen manner in which he was injured. See Case Comment, *Tort Liability—Cunis v. Brennan, A Defendant Has No Duty To Protect A Plaintiff Injured by Defendant's Negligent Conduct Where Plaintiff's Injury Was Not Reasonably Foreseeable under the Circumstances,* 6 Loy. U. Chi. L.J. 482 (1975); see also *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 375.

While under the particular facts of *Cunis,* the court's ultimate result seems appropriate, the rule of law which emerged from that case seemingly limits application of the well-established principle of tort law that the particular manner or method by which a plaintiff is injured is irrelevant to a determination of the defendants' liability for negligence. (See *Blue v. St. Claire Country Club* (1955), 7 Ill. 2d 359; *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366; *Ray v. Cock Robin, Inc.* (1973), 10 Ill. App. 3d 276, *aff'd* (1974), 57 Ill. 2d 19; *Przybylski v. Yellow Cab Co.* (1972), 6 Ill. App. 3d 243; *Del Raso v. Elgin, Joliet & Eastern Ry. Co.* (1967), 84 Ill. App. 2d 344; Restatement (Second) of Torts sec. 435(1) (1965); 57 Am. Jur. 2d *Negligence* sec. 59

(1971); see Annot., 100 A.L.R.2d 942, sec. 5(c) (1965).) It is generally accepted that where the plaintiff's injury resulted from the same physical forces whose existence required the exercise of greater care than was displayed and were of the same general sort expectable, unforeseeability of the exact developments and of the extent of loss will not limit liability. (*Petition of Kinsman Transit Co.* (2d Cir. 1964), 338 F.2d 708.) For example, if a ship owner fails to clean petroleum out of his oil barge moored at a dock, he has created an undue risk of harm through fire or explosion. The fact that a fire is ignited by the unusual event of lightning striking the barge does not relieve the ship owner from liability to foreseeable plaintiffs who are injured. See Restatement (Second) of Torts sec. 442B, Illust. 1 (1965); see also Annot., 100 A.L.R.2d 942 (1965).

Although the approach evidenced in *Cunis* appears to conflict with more traditional tort jurisprudence, some subsequent decisions have distinguished or failed to follow that case in order to achieve a desired result. For example, in *Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, Justice Goldenhersh, who dissented in *Brown, Cunis, Winnett* and *Barnes*, wrote an opinion which addressed foreseeability primarily in terms of causation, not duty. Citing the principle that it is unnecessary for a defendant to foresee with precision the nature of the injurious occurrence, the court acknowledged the validity of plaintiff's negligence claim despite the unusual forklift accident in which plaintiff was involved. Likewise in *Kenny v. Lakewood Engineering & Manufacturing Co.* (1979), 85 Ill. App. 3d 790, defendant's uncommon method of unloading a trailer with a forklift did not negate his claim. The court stated that defendant's exact conduct need not be entirely foreseeable to constitute the legal cause of plaintiff's injury. In *Greene v. City of Chicago* (1976), 48 Ill. App. 3d 502, *aff'd* (1978), 73 Ill. 2d 100, the plaintiff was hit by an intoxicated driver after the former's car stalled near an unlighted city intersection. In finding the city could be held liable to plaintiff for failure to ensure working street lights at the intersection, the court stated that it was unnecessary that the precise nature of the occurrence be foreseeable. In *Brooks v. Lundeen* (1977), 49 Ill. App. 3d 1, this court expressly reasoned that they did not find the "extraordinary cause and effect described in *Cunis* to be analogous" to the case and they relied instead upon the contrasting approach presented in the *Lewis* decision.

Other cases indicate a willingness on the part of the judiciary to stretch "foreseeability" to rather unusual consequences in order to find a duty owed to plaintiff. For instance, in *Laflin v. Estate of Mills* (1977), 53 Ill. App. 3d 29, the plaintiff was injured when he fell trying

to escape from a fire in his house which defendant started. The court, obviously concerned with reaching a just result, found the sequence of events leading to plaintiff's injury foreseeable as a matter of law. (See also *Tracy v. Village of Lombard* (1983), 116 Ill. App. 3d 563 (a plaintiff using defendant's stairs with crutches caught the tip of a crutch in a crack and fell. The court found the particular occurrence foreseeable).) Some decisions have cited *Cunis* as authority, yet proceeded to focus upon the foreseeability of the ultimate harm a plaintiff incurred, rather than upon the foreseeability of the manner in which plaintiff was injured. These decisions attempt to apply "foreseeability" in its more traditional sense; meaning, foreseeability of a general type of injury to a particular class of plaintiffs. *Cunis*, however, suggested a narrower concept of foreseeability, referring to the foreseeable risk of a particular injury arising in a particular way. (See Turkington, *Foreseeability And Duty Issues In Illinois Torts; Constitutional Limitations To Defamation Suits Under Gertz*, 24 De Paul L. Rev. 243, 259 (1975).) For example in *Walsh v. A.D. Conner, Inc.* (1981), 99 Ill. App. 3d 427, the court, in analyzing the foreseeability of plaintiff's fall from a ladder discussed only the reasonable likelihood of such a fall occurring. The manner by which plaintiff slipped off the ladder was addressed only in terms of plaintiff's contributory negligence, not in terms of the foreseeability of plaintiff attempting that particular means of ascending the ladder. See also *Greene v. City of Chicago* (1976), 48 Ill. App. 3d 502, *aff'd* (1978), 73 Ill. 2d 100.

Because of these apparent inconsistencies, the proper application of the *Cunis* "foreseeability" test would seem to require a return to a basic analysis of the duty determination in negligence claims. Of paramount importance is the fundamental understanding that the legal concept of "duty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. (*Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 356; see *Ortiz v. City of Chicago* (1979), 79 Ill. App. 3d 902, 907; *Illinois Housing Development Authority v. Sjostrom & Sons, Inc.* (1982), 105 Ill. App. 3d 247, 261-62.) The judge's function in a duty determination involves complex considerations of legal and social policies which will directly affect the essential determination of the limits to government protection. Consequently, as the *Cunis* opinion notes, the imposition and scope of a legal duty is dependent not only on the factor of foreseeability (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375) but involves other considerations, including the magnitude of the risk involved in defendant's conduct, the burden of requiring defendant to guard against that risk, and the

consequences of placing that burden upon the defendant. See *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348; *Barnes v. Washington* (1973), 56 Ill. 2d 22, 29; *Lance v. Senior* (1967), 36 Ill. 2d 516, 518; *Bloomingdale State Bank v. Capitol Bank* (1983), 116 Ill. App. 3d 132, 135.

■ While foreseeability is thus a proper matter for a court to consider in making its duty determination, the sounder approach would be to recall that the duty issue is broad in its implication and it is only the jury's negligence determination which need be strictly confined to the facts of the particular case. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 544, citing Green, *Foreseeability in Negligence Law*, 61 Colum. L. Rev. 1401, 1417-18 (1961).) In other words, foreseeability is a determinative consideration only where a particular occurrence is so extreme that, as a policy decision, it would be unwise to require defendant to guard against it. In the majority of cases, where varying inferences are possible from the facts, a court should permit the jury to decide the foreseeability issue, including the foreseeability of the particular cause and effect of plaintiff's injury, as a factual matter in its proximate cause determination. (*Cf. Brooks v. Lundeen* (1977), 49 Ill. App. 3d 1, 7-8; *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 12-13.) This approach would strike a sound balance between inviting trial courts to invade the jury's province on what is essentially a factual matter, and permitting a sympathetic jury to find an event foreseeable in even the most bizarre cases.

Applying this approach to the instant case, the question for determination by this court is whether Warren Nelson's electrical injuries were so unforeseeable an occurrence that the trial court could properly conclude that the defendants owed him no legal duty of protection. While Illinois precedent includes a line of cases involving accidental electrocution or injury by power transmission wires, the facts in each case are the determinates of the "foreseeability" of the particular injury and thus the majority of these cases are of limited value in analyzing the instant scenario.

In support of their position, the defendants cite several decisions in which it was found that a defendant power company or landowner was not responsible for the electrical injury sustained by the particular plaintiffs. (See *Clinton v. Commonwealth Edison Co.* (1976), 36 Ill. App. 3d 1064; *Scaife v. Kansas City Power & Light Co.* (Mo. App. 1982), 637 S.W.2d 731; *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456.) In the *Clinton* case, a 15-year-old boy was electrocuted by transmission wires over his family's yard. The lines were clearly visible from the ground and approximately 22½ feet in height. Apparently,

the youth had brought a 25-foot aluminum pole into contact with the uninsulated power lines, causing his electrocution. In dismissing plaintiff's claim, the court noted that unlike several cases plaintiff cited (*Merlo v. Public Service Co.* (1942), 381 Ill. 300; *Austin v. Public Service Co.* (1921), 299 Ill. 112; *Ploense v. Illinois Power Co.* (1971), 2 Ill. App. 3d 874), the defendants in *Clinton* were not expressly aware, nor should they have been expected to anticipate, that a 15-year-old boy would come into contact with the unobstructed wires over his home. The court also stated that while it was difficult to find local precedent with analogous facts, a Missouri case was similar. In *Foote v. Scott-New Madrid-Mississippi Electric Cooperative* (Mo. App. 1962), 359 S.W.2d 40, a 16-year-old boy was electrocuted when he threw a can attached to a copper wire over an uninsulated transmission line adjacent to his family's rural home. The power line was clearly visible and approximately 25½ feet above the ground. In order not to repudiate the doctrine that power companies are not absolute insurers of public safety, the Missouri court felt obliged to place limits upon the extent of duty owed by power companies, and it dismissed plaintiff's claim for failure to show the existence of a duty. See *Clinton v. Commonwealth Edison Co.* (1976), 36 Ill. App. 3d 1064, 1071.

It must be noted, however, that a crucial fact in the *Clinton* court's decision was that the plaintiff, in both that case and in the *Foote* case, was injured on the grounds of a private residence. The court distinguished the *Merlo* and *Austin* cases on the basis that those disputes involved occurrences happening on public thoroughfares where it was foreseeable that persons would come into contact with power lines. (*Clinton v. Commonwealth Edison Co.* (1976), 36 Ill. App. 3d 1064, 1071.) For example, in the *Austin* case, a 13-year-old boy was killed when he touched defendant's electrical line which was stretched above a public bridge. The youth had climbed on top of the bridge and walked across a beam to reach a bird's nest. The supreme court conceded that the defendant did not have a duty to insulate its entire electrical system, but in this instance it could have reasonably anticipated that workmen or service linemen might lawfully be in a position to come into contact with the lines. Likewise, in *Martens v. Public Service Co.* (1920), 219 Ill. App. 160, a seven-year-old boy was electrocuted when he threw a ball of string containing copper wire over power lines in a public street. Although the defendants argued that this was not a foreseeable accident, the court rejected the defendant's contention and recited the maxim that defendant was required to anticipate the legal use of the public way by the general public, including children. *Martens v. Public Service Co.* (1920), 219

Ill. App. 160, 164-65; see also Annot., 69 A.L.R.2d 9, sec. 5(e) (1960) (liability for injury to children at play when coming into contact with electrical lines); Annot., 91 A.L.R.3d 616, sec. 4(a) (1979) (liability for injury to or death of child from electric wire encountered while climbing tree).

The defendants in the instant case contend that the cases cited by Nelson are distinguishable because many of them involved instances where the power company had been expressly put on notice of the plaintiff's forthcoming proximity to the electrical lines. (See *Ploense v. Illinois Power Co.* (1971), 2 Ill. App. 3d 874; *Troszynski v. Commonwealth Edison Co.* (1976), 42 Ill. App. 3d 925; *Martens v. Public Service Co.* (1920), 219 Ill. App. 160; *McGill v. Illinois Power Co.* (1959), 18 Ill. 2d 242.) However, the lack of express notice of plaintiff's particular park activities in the instant case would not seem to be a valid, nor logical, factor to distinguish the instant dispute from the cases favoring plaintiff. Warren Nelson was injured in a public playground, where defendants should have reasonably anticipated both the presence of children and their creative and innumerable playtime activities; no express notice is necessary where these objective facts suffice to put a defendant on notice of plaintiff's proximity to the electrical wires. Young Nelson was rightfully in a public area which was designated as a playground for children of all ages. If defendant Edison chose to continue its dangerous activities such as the transmission of high voltage electricity in close proximity to an area which they have leased to a park district, it must be charged with a duty of protection commensurate with the risks involved. Because of the nature of the electrical business and highly charged wires, an electric utility company owes a duty to see that such wires are properly placed and/or properly insulated where the conditions and circumstances indicate that persons might come into reasonable proximity to those wires. (See *German v. Illinois Power Co.* (1983), 115 Ill. App. 3d 977, 982-84; *Ploense v. Illinois Power Co.* (1971), 2 Ill. App. 3d 874, 879; *Merlo v. Public Service Co.* (1942), 381 Ill. 300; *Austin v. Public Service Co.* (1921), 299 Ill. 112.) Similarly, the defendant park district owed a duty to the public and the plaintiff not to operate a public park under these circumstances. Under the rulings of the aforementioned cases, it cannot be said that plaintiff's injuries, caused by tossing a copper wire near high voltage uninsulated power lines in an open playground, were so objectively unforeseeable as to warrant dismissal of his claim because of a failure to show the existence of a legal duty. See Annot., 69 A.L.R.2d 9, sec. 5(e) (1960); Annot., 91 A.L.R.3d 616, sec. 4(a) (1979).

In addition to the foreseeability of the instant occurrence, the other factors relevant to a court's duty determination, including matters of public policy and social consideration, also favor the imposition of a duty upon the defendants for the instant occurrence. First, the likelihood of an injury from the power line has already been made apparent by the previous discussion. Considering the height, location, and voltage of the wires, there was clearly some chance of contact with them and the resulting injury from any such contact would inevitably be severe. Second, the magnitude of the defendants' burden in reducing the risk of electrocution or injury is not as onerous as defendants imply. Because of the particular facts involved in the instant case, neither Edison nor the park district would become an absolute insurer against all accidents. It is not such a great burden for the defendants to insure that high voltage electrical wires in the open area of a public playground—an area in which children have been tacitly invited to use the air space—are either insulated, placed underground, or redirected around such air spaces. Finally, while preventive measures would necessarily result in some economic and social impact, the aforementioned alternatives available to the defendants would not create undue costs or problems. The facts of the instant case require only a limited holding that in the erection, maintenance, and placement of high voltage electrical wires in public playgrounds, power companies and land occupiers are charged with a duty to children to provide safe air space. Duty is not a static concept but must adapt to changing notions and policy decisions. *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 357.

■ Although the parties do not argue the issue in their briefs, our examination of the instant dilemma also requires at least an abbreviated mention of the negligence doctrines announced in *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, and recently reviewed in *Cope v. Doe* (1984), 102 Ill. 2d 278, 285-86. We find it sufficient under the facts of the instant case, however, to simply observe that the facts well pleaded in counts I and II of plaintiff's amended complaint, together with all reasonable inferences favorable to him, are sufficient at the pleading stage to establish that defendants, as owners and possessors of the land, knew that children frequented and played upon the premises and that under the total circumstances as shown by the pleadings, a dangerous condition existed which created a reasonably foreseeable risk of harm to children which the defendants under the law had a duty to remedy. (See *Cope v. Doe* (1984), 102 Ill. 2d 278, 285-86; *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326; *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614; *Fuller v. Justice*

(1983), 117 Ill. App. 3d 933, 941.) This conclusion is necessarily founded upon our foregoing analysis that the scope of the defendants' duties included an obligation to guard against injuries which were "reasonably foreseeable" from the park activities in which the defendants invited children to participate. See *Cope v. Doe* (1984), 102 Ill. 2d 278, 285-86.

■ Plaintiff's original count III sought relief against Commonwealth Edison based upon the theory of strict liability in tort. The trial court dismissed this count on the ground that electricity was not a "product" as that term is used in strict liability in tort cases. (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 463-65.) Plaintiff does not contest that ruling but on appeal asserts that in count III of his amended complaint he properly stated a cause of action against the defendant utility on the grounds that in transmitting high voltage electricity, the defendant was engaged in an inherently and intrinsically dangerous activity and is absolutely liable for damages which flow therefrom without regard to negligence.

While the plaintiff is correct in noting that Illinois courts have characterized electricity as a " '*** silent, deadly and instantaneous force ***' " (*Merlo v. Public Service Co.* (1942), 381 Ill. 300, 314; *Spence v. Commonwealth Edison Co.* (1975), 34 Ill. App. 3d 1059, 1067), such precedent does not mandate the imposition of absolute liability upon electrical power companies. Certainly, the distribution of electrical energy requires power companies to exercise a high degree of care (*McGill v. Illinois Power Co.* (1959), 18 Ill. 2d 242; *German v. Illinois Power Co.* (1983), 115 Ill. App. 3d 977; *Ploense v. Illinois Power Co.* (1971), 2 Ill. App. 3d 874); however, the concept of absolute liability is reserved only for abnormally dangerous activities for which no degree of care can truly provide safety. (See Restatement (Second) of Torts sec. 519 (1981).) Absolute liability has not been imposed on power companies in Illinois because of the obvious social and economic burdens, and Illinois courts have frequently echoed the principle that power companies are not absolute insurers of public safety. (*Merlo v. Public Service Co.* (1942), 381 Ill. 300, 313; *Clinton v. Commonwealth Edison* (1976), 36 Ill. App. 3d 1064, 1068; *Austin v. Public Service Co.* (1921), 299 Ill. 112, 119; see also 26 Am. Jur. 2d *Electricity, Gas & Steam* sec. 59 (1966).) There is a clear distinction between requiring a defendant to exercise a high degree of care when involved in a potentially dangerous activity and requiring a defendant to absolutely insure the safety of others when engaging in an ultrahazardous activity; Illinois has held electrical power companies only to the former standard. The doctrine of absolute liability is consequently inapplicable to

the present situation.

Plaintiff's last point of contention in this appeal concerns the propriety of the trial court's dismissal of her wanton and wilful negligence counts against the defendants. Inasmuch as the court determined that plaintiff's complaint failed to state a cause of action based upon mere negligence, the court's similar dismissal of the wanton and wilful counts was the logical course of action. However, since we have concluded that the trial court erred in dismissing the plaintiff's negligence counts, the plaintiff's wanton and wilful counts should not have been dismissed. See *Spence v. Commonwealth Edison Co.* (1975), 34 Ill. App. 3d 1059, 1067.

We affirm the dismissal of count III of plaintiff's original complaint and the denial of leave to plaintiff to file count III of his proposed amended complaint. We reverse the dismissal of counts I, II, IV and V of plaintiff's complaint and that portion of the trial court's order which denied plaintiff leave to file an amended complaint as to counts I, II, IV and V, and we remand the cause to the trial court for further proceedings.

Affirmed in part; reversed in part and remanded with directions.

LINDBERG and UNVERZAGT, JJ., concur.