AMERICAN CENTENNIAL INSURANCE COMPANY, as subrogee of Royal Redemption Center, Inc., Plaintiff-Appellant, v. WELLS FARGO ALARM SERVICES, Defendant-Appellee.

First District (1st Division)   No. 83—3077

Opinion filed July 21, 1986.—Rehearing denied March 11, 1987.

Richard D. Heytow and Paul J. Wisner, Ltd., both of Chicago, for appellant.

Peterson, Ross, Schloerb & Seidel, of Chicago (J. Robert Geiman and Robert A. Seidel, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

The present appeal involves the liability of an alarm company for burglary losses sustained when it allegedly failed to render proper services on receipt of a signal from the burglar-alarm equipment.

The record before us reflects as follows. Plaintiff, American Centennial Insurance Company (American Centennial), insured property of Royal Redemption Center (Royal Redemption) for loss due to theft or burglary. Prior to December 9, 1982, Royal gave some of its property to State Pawners and Jewelers (State Pawners) at 408 South State Street in Chicago for the purpose of cleaning, repairing and servicing. On or about December 9, 1982, a burglary occurred at State Pawners, and Royal's property was taken. American Centennial paid Royal the policy limits of $20,000 for the stolen property.

American Centennial thereafter filed a complaint at law against Larry Cohen, d/b/a State Pawners & Jewelers, and Wells Fargo Alarm Services (Wells Fargo). Count II of the complaint was directed only at Wells Fargo and is the subject of the present appeal. Count II alleged that at the time of the burglary, Wells Fargo provided alarm and other services for State Pawners. It further alleged that the alarm equipment provided by Wells Fargo functioned properly and indicated that the burglary was occurring at 8:08 p.m. Plaintiff alleged, however, that Wells Fargo personnel were negligent in that they failed to respond to the alarm in any manner for nearly three hours and did not notify the Chicago police department until more than three hours after the alarm was activated.

Wells Fargo filed a motion for summary judgment, contending that plaintiff was barred from bringing any action in tort by virtue of the doctrine precluding recovery of economic losses in tort. The trial court granted summary judgment on count II, and American Centennial appeals.

On appeal, American Centennial argues that the trial court erred in finding that its recovery was precluded by the economic-loss doctrine set forth in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443. Wells Fargo, in turn, responds that the trial court should be affirmed because plaintiff is merely seeking recovery for commercial losses "caused by the failure to perform contractual duties." As a result, Wells Fargo concludes that the economic-loss doctrine bars this action in tort.

In *Moorman*, the supreme court observed that economic loss had

been defined "as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—*without any claim of personal injury or damage to other property* \*\*\*' [citation]." (Emphasis added.) (91 Ill. 2d 69, 82, 435 N.E.2d 443; *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 156, 449 N.E.2d 125.) More recently, the supreme court defined the parameters of the economic-loss doctrine in *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378. The factual scenario in *Scott & Fetzer* is analogous to the circumstances now before us. In that case, a fire originated in the portion of a large warehouse which was partially occupied by Montgomery Ward & Company, Inc. (Wards). Pursuant to an agreement with Wards, Burns Electronic Security Services, Inc. (Burns), had installed and maintained fire-warning systems in this portion of the building. The equipment allegedly malfunctioned, and the fire spread throughout the warehouse, causing extensive damage to Wards' property and to the property of the tenants of the remaining portions of the building. The tenants, who were not parties to the Wards/Burns contract, brought actions in tort against Burns for their losses. The trial court dismissed the tenants' actions against Burns, ruling that recovery was barred by the economic-loss doctrine. The supreme court, in reversing the dismissal, stated:

"We recognized in *Moorman* that the dividing line between property damage and economic loss depends on the nature of the defect and the manner in which the damage occurred. (91 Ill. 2d 69, 82.) We held in that case that '[w]hen the defect is of a qualitative nature and the harm relates to the consumer's expectation that a product is of a particular quality so that it is fit for ordinary use, contract \*\*\* law provides the appropriate set of rules for recovery. [Citation.]' (91 Ill. 2d 69, 88.) \*\*\*

In the instant case, the adjacent tenants' losses are not economic. They are seeking damages for the loss of property other than the defective product. The complaints pray for damages resulting from the loss of audio equipment, paint sprayers, speakers, inventory, supplies, and stock." 112 Ill. 2d 378, 387-88.

Based on *Scott & Fetzer*, we conclude that the losses sustained here are not economic. Plaintiff is seeking damages for the loss of property other than the alarm system. The complaint seeks recovery for Royal Redemption's property stolen in the burglary. Such loss falls outside the definition of economic loss adopted by our supreme court.

■ Wells Fargo argues that even if the damages sought here are not deemed economic loss, the granting of summary judgment in its favor was proper because plaintiff has failed to show "the existence of a duty of care flowing from Wells Fargo to Royal Redemption." We disagree. The fact that plaintiff's subrogor was not a party to the contract between State Pawners and Wells Fargo does not relieve Wells Fargo from the duty of exercising due care to prevent the losses in question. In *Scott & Fetzer*, the supreme court specifically rejected the argument that an alarm company owes no duty to those with whom it is not in privity, stating:

"In a case where inspections relating to safety were involved, this court recognized that '[a] defendant's liability for the negligent performance of its undertaking *** extends *** to such persons as defendant could reasonably have foreseen would be endangered as the result of negligent performance. *** [E]very person owes to all others a duty to exercise ordinary care to guard against injury which naturally flows as a reasonably probable and foreseeable consequence of his act, and *** such duty does not depend upon contract *** but extends to remote and unknown persons. [Citations.]' *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 86." (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 389-90.)

The *Scott & Fetzer* court, in finding that the alarm company in that case owed a duty to third-persons to guard against losses, further reasoned:

"In *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, this court impliedly adopted section 324A of the Restatement (Second) of Torts (1965), which states:

'One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.'

* * *

Wards contracted with Burns for the installation and main-

tenance of a 'central station protective signaling system' and a 'waterflow alarm system.' As noted in *Pippin*, by entering into this agreement Wards, 'as a matter of law, relied upon [Burns] to perform its undertaking.' (*Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 211.) Under subsection (c) it is sufficient to create the duty for Wards to have relied upon the undertaking by Burns. It was not necessary to establish that there was reliance by the third-persons (adjacent tenants). 78 Ill. 2d 204, 211." *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 390-91.

Similarly, in this case, State Pawners contracted with Wells Fargo for the installation and maintenance of a "Central Station Burglar Alarm Service." As noted in *Scott & Fetzer*, by entering into this agreement State Pawners "as a matter of law, relied upon [Wells Fargo] to perform its undertaking." It is not necessary to establish that there was reliance by the third-person (plaintiff's subrogor). Rather, under subsection (c) of section 324A it is sufficient to create the duty for State Pawners to have relied upon the undertaking by Wells Fargo.

■ Moreover, as in *Scott & Fetzer*, we are convinced that policy and social factors support the imposition of a legal duty owed to plaintiff's subrogor. The losses here were "highly foreseeable" under the circumstances. The magnitude of the burden of guarding against such losses involves no more than the exercise of due care. Imposing a duty in this case provides the necessary incentive for Wells Fargo and others who supply and maintain alarm systems to use reasonable care in the future. See *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 389.

■ Finally, we observe that the contract between Wells Fargo and State Pawners contained an exculpatory clause which provides, in pertinent part, as follows:

"It is understood that Wells Fargo is not an insurer; ***. Subscriber agrees that Wells Fargo shall not be liable for any of Subscriber's losses or damages, irrespective of origin, to person or to property, whether directly or indirectly caused by performance or nonperformance of obligations imposed by this contract or by negligent acts or omissions of Wells Fargo, its agents or employees. The Subscriber does hereby waive and release any rights of recovery against Wells Fargo that it may have hereunder. It is agreed that if Wells Fargo should be found liable for any losses or damages attributable to a failure of systems or services in any respect, its liability shall be lim-

ited to a sum equal to ten percent of the annual charge hereunder, or $250.00, whichever is greater."

In *Scott & Fetzer*, it was held that a similar exculpatory clause contained in Burns' contract with Wards did not affect Burns' duty to the adjacent tenants who were not parties to the contract. Accordingly, in this case, the above clause similarly does not affect Wells Fargo's duty to plaintiff's subrogor.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and remanded for proceedings consistent with this opinion.

Reversed and remanded.

CAMPBELL and O'CONNOR, JJ., concur.