LENOX, INCORPORATED, a New Jersey corporation, Plaintiff,

v.

TRIANGLE AUTO ALARM, A DIVISION OF TRIANGLE STEREO, INC., an Illinois corporation and Techne Electronics, Ltd., a California corporation, Defendants.

No. 89 C 1743.

United States District Court, N.D. Illinois, E.D.

May 8, 1990.

David A. Epstein, Penny Brown, Much Shelist Freed Deneberg Ament & Eiger, P.C., Chicago, Ill., for plaintiff.

Charles H. Cole, Gregory B. Bolduc, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for Triangle Auto Alarm.

John N. Dore, John J. Fitzgerald, Law Offices of John J. Fitzgerald, Chicago, Ill., for Techne Electronics, Ltd.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This action is before the Court on motion of Triangle Stereo, Inc. for summary judgment on Counts I–III of Lenox, Inc.'s complaint. For the reasons set forth below, the Court grants Triangle's motion.

## FACTS

As a full-time jewelry salesman employed by Lenox, Inc., George DePasse regularly carried valuable jewelry samples owned by Lenox. The jewelry salespersons customarily undertook certain security measures to ensure against theft of the samples. Upon recommendation of the security chief of Lenox and at the suggestion of his colleagues, DePasse decided to have an "Ungo" auto alarm installed in his automobile to help protect the jewelry samples he occasionally stored in the trunk of his car. DePasse Dep., at 69–70, 198. After noticing Triangle's newspaper advertisement for the Ungo alarm system in October of 1986, DePasse went to Triangle to purchase the alarm system. *Id.* at 69. Sensitive to his company's security concerns, DePasse took care to avoid disclosing that he often kept valuable jewelry in the trunk of his car. *Id.* at 77–79. Triangle installed the Ungo system requested by DePasse. According to DePasse, the system appeared to function properly at all times, except for one repair to the wiring made approximately a month after purchase. *Id.* at 79–80. After the Ungo alarm system was installed by Triangle, DePasse took further measures to ensure the safety of his samples when stored in his trunk. DePasse bolted to the inside of his trunk a length of chain short enough to prevent a thief who had popped the trunk from removing the box of jewelry through the opening between the trunk lid and the bottom of the trunk.

On March 4, 1987, while DePasse was making several sales calls inside a shopping center mall in Racine, Wisconsin, his car was stolen from the parking lot. DePasse reported to police that approximately $125,000 worth of jewelry samples were stored in the trunk of the stolen car. The police report described the condition of the vehicle found two days later amidst some bushes off the street. The officer who inspected the auto observed no signs of tampering on the door, trunk, or ignition locks, but did report a "crinkle in the back of the trunk" as if someone had attempted to pry open the trunk or perhaps open it just enough to remove the jewelry samples.

Lenox brings contract and tort claims against Triangle and the manufacturer of the alarm, Techne Electronics, Ltd. Triangle alone has moved for summary judgment. Of the three counts directed toward Triangle, Counts I and II allege breach of express and implied contractual warranties, respectively. Count III alleges that, but for the negligent installation of the auto alarm by Triangle, the automobile and jewelry samples would not have been stolen. Lenox prays for $125,000 in damages, representing the wholesale value of the stolen samples, plus costs and fees.

## LAW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party moving for summary judgment has the burden of informing the court of the basis for his motion by identifying items in the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To be well grounded in fact, as required by Fed.R.Civ.P. 11, a summary judgment motion must contemplate the entire record. *Goka v. Bobbitt,* 862 F.2d 646, 650 (7th Cir.1988). In other words, moving parties cannot discharge their burden by "identif[ying] *only* those portions of the record which support their position ... [when] there exists evidence to contrary of which [movants] are aware." *Id.* (emphasis in original).

When the burden of persuasion at trial would be on the nonmoving party, as is true in this case, the movant may satisfy his burden of production in one of two ways. *Celotex,* 477 U.S. at 331, 106 S.Ct. at 2556 (Brennan, J., dissenting). The movant may submit affirmative evidence that negates an essential element of the claim, or he may demonstrate that the evidence adduced by the nonmoving party is insuffi-

cient to establish an essential element of the claim. *Id.*

When the movant has successfully carried his burden of production, summary judgment is appropriate unless the opposing party sets forth specifit facts that demonstrate the existence of a genuine issue of material fact for trial. *Id.* at 324, 106 S.Ct. at 2553. A nonmoving party cannot carry this burden by merely relying upon his pleadings. *Id.* Nor, contrary to Lenox's belief, can the nonmovant do so by pointing to the statement of contested issues of fact contained in a preliminary pretrial scheduling order. *See Associates in Adolescent Psychiatry v. Home Life,* 729 F.Supp. 1162, 1192 (N.D.Ill.1989). Rather, a nonmoving party with the burden of persuasion on an issue must set forth evidence on each essential element of his claim sufficient to satisfy the requisite burden of proof. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (the standard for summary judgment "mirrors the standard for directed verdict" and focusing inquiry upon " 'whether there is any [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.' ") (quoting *Improvement Co. v. Munson,* 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1872)). When applying this standard, the court must examine all the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. *Bowyer v. United States Dep't of Air Force,* 804 F.2d 428, 430 (7th Cir.1986).

*Count I—Breach of Express Warranties*

In its complaint, Lenox claims that DePasse purchased the Ungo alarm system in reliance upon the advice of the Triangle salesman. Lenox alleges that the salesman recommended the Ungo system after DePasse had informed the salesman that he needed an alarm system to protect valu-able jewelry samples he regularly carried in the trunk of his car. Count I asserts that Triangle's representations constituted an express warranty that the alarm system would protect the jewelry and that breach of the express warranty was the cause of the plaintiff's damages. But as detailed above, DePasse testified in his deposition that none of these allegations is true.

"Generally speaking, in order to constitute an express warranty there must be either an express undertaking to warrant in so many words, or, if representations are relied upon to make out a warranty, they must be made in such manner and circumstances to authorize the buyer to understand that the seller intended to be bound by them as part of the contract of sale." 77 C.J.S. *Sales* § 308 (1952). Similarly, under the Uniform Commercial Code in Illinois, an express warranty is created by "[a]ny affirmation of fact or promise ... which relates to the goods and becomes part of the basis of the bargain." Ill.Rev. Stat. ch. 26, para. 2–313 (1987).[1] Significantly, an express warranty requires that the seller make or accede to some representation regarding the performance or quality of the product. Defendant Triangle points to several items in the record that suggest no express warranty was made by the defendant. First, DePasse did not inform the alarm salesman that he was a jewelry salesman or that he regularly carried jewelry in the trunk of the vehicle. DePasse Dep., at 77–79.[2] Second, Triangle did not recommend the Ungo system to DePasse; on the contrary, DePasse purchased the system upon the recommendation of fellow employees of Lenox. DePasse Dep., at 70, 198. Third, DePasse testified that he understood the words "Lifetime Warranty" handwritten upon his receipt to mean, at most, that Triangle would repair any defects in the alarm or its installation. DePasse Dep., at 81–82.

DePasse further testified that the only document he received from Triangle was a

---

1. For a discussion of the issue of whether reliance by the buyer is required, see B. Clark & C. Smith, *The Law of Product Warranties* ¶ 4.03[2] (1984).

2. Indeed, DePasse testified that it would be contrary to his employer's security concerns to disclose that he stored valuable jewelry samples in the trunk of his car. DePasse Dep., at 78.

sales invoice, attached to the complaint as Exhibit A. *Id.* at 83. The invoice contains the following warning written in capital letters: "Not responsible for loss or damage to cars or articles left in cars in case of fire, theft, or any other cause beyond our control." Far from promising to protect goods left in a car from risk of theft, this language expressly and prominently disclaims such liability.

The Court concludes that Triangle met its burden of production under Rule 56 by pointing to evidence in the record that tends to negate essential elements of the plaintiff's cause of action. Accordingly, the burden of production shifted to Lenox to set forth specific facts that make the creation of an express warranty a genuine issue for trial. Plaintiff states in its response to defendant's motion for summary judgment that defendant's motion has prematurely raised legal arguments regarding whether express warranties ever arose under operation of law. Response Memorandum, at 10–11. Although plaintiff characterizes the factual predicates of whether warranties were given as "disputed," Lenox does not meet its burden of coming forward with evidence to create a genuine issue of material fact. Consequently, summary judgment is granted on Count I of the complaint.

*Count II—Breach of Implied Warranties*

■ Lenox also alleges that breaches of implied warranties of merchantability and fitness for a particular purpose were the proximate cause of the theft of the auto and the jewelry samples. Under the U.C.C., the measure of damages available to a buyer for breach of warranty is generally the difference between the value of the goods as accepted and the value the goods would have had as warranted. Ill.Rev. Stat. ch. 26, para. 2–714(2) (1987). However, the Code also permits recovery of consequential damages under certain circumstances. Ill.Rev.Stat. ch. 26, para. 2–714(3) (1987). Specifically, the statute provides that recoverable consequential damages include those for "injury to person or property proximately resulting from any

breach of warranty." Ill.Rev.Stat. ch. 26, para. 2–715(2)(b). Therefore, if a consumer is injured or his property damaged by a defective product, warranty theory under Article 2 of the Code provides a remedy. *See, e.g.,* B. Clark & C. Smith, *The Law of Product Warranties* ¶ 7.07[1] (1984).

An important and well-known limitation upon the recovery of consequential damages is the requirement of foreseeability. The drafters of Article 2 of the Code have codified *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng.Rep. 145 (1854), in which the plaintiff sued the carrier-defendant for profits lost during the delay in the shipment of the plaintiff's mill shaft to the repairman. Clark & Smith, *supra,* at 7–65. In *Hadley,* the court held that consequential damages could only be recovered when any "special circumstances" giving rise to the damages were made known to the defendant. *Id.* at 7–65 to 7–66.

The comments to U.C.C. § 2–715 emphasize the foreseeability requirement. Comment 2 states that the Code follows the "older rule at common law which made the seller liable for all consequential damages of which he had 'reason to know.'" Comment 3 elaborates by distinguishing the particular needs of the buyer which must be made known to the seller in order to charge him with knowledge from the general needs which rarely must be made known to the seller in order to charge him with knowledge. Illinois law is in accord with this interpretation of the Uniform Commercial Code. *See e.g. Adams v. J.I. Case Co.,* 125 Ill.App.2d 388, 261 N.E.2d 1, 8–9 (4th Dist.1970) (relying upon the Official Comment to interpret consequential damage provisions).

As discussed regarding Count I above, DePasse did not make known either the particular needs or the general needs of Lenox with respect to the use of his auto alarm. DePasse did not advise Triangle of the particular purpose for which he intended to use the auto alarm. *See* DePasse Dep., at 77. Nor did DePasse inform the salesman that he sold jewelry. In fact, nothing in the record shows that Triangle was informed that the car was to be used

for business. Thus, there is nothing to support Lenox's allegation that DePasse informed the defendant of the special purpose to which he intended to put the alarm system. Accordingly, as a matter of law, plaintiff may not recover the loss of the jewelry as consequential damages for breach of implied warranties, and summary judgment is granted on Count II of the complaint.

*Count III—Negligent Installation of Alarm*

Lenox alleges that Triangle knew or should have known that if the alarm system were negligently installed the system would not protect against theft. Lenox claims that, but for the negligent installation of the alarm, the automobile and jewelry would not have been stolen.

Triangle's Duty

▇▇▇ Initially, the Court notes that the existence of a duty is a question of law to be decided by the Court. *Felty v. New Berlin Transit, Inc.*, 71 Ill.2d 126, 15 Ill. Dec. 768, 374 N.E.2d 203 (1978); *Cunis v. Brennan*, 56 Ill.2d 372, 308 N.E.2d 617 (1974). Triangle asserts that it owed no duty to the purchaser of an alarm system to prevent the criminal conduct of a third party. *Boyd v. Racine Currency Exchange*, 56 Ill.2d 95, 306 N.E.2d 39 (1974). The defendant argues that because the purpose of an auto alarm is merely to deter auto theft, placing a duty upon Triangle to prevent criminal conduct would be tantamount to making Triangle "an absolute insurer against theft" and that such a duty would amount to an "insurmountable burden" upon the seller-installer of an auto alarm. Memorandum in Support of Summary Judgment, at 6–7.

Defendant's reliance upon *Boyd* is misplaced. That case involved the dismissal of an action against the Racine Currency Exchange for the wrongful death of the plaintiff's decedent, who was shot when the defendant's employee refused to accede to the demands of an armed robber. The plaintiff contended that a business proprietor has a duty to honor criminal demands when a failure to do so would expose business invitees to an unreasonable risk. 306

N.E.2d at 40. The Illinois Supreme Court held that business owners have no duty to accede to criminal demands. The court reasoned that to impose such a duty would be poor public policy because it would serve to encourage criminals to take hostages and therefore increase the risk to business invitees. *Id.* at 42.

▇▇▇ Although the *Boyd* case supports the general rule in Illinois and other jurisdictions that a person has no duty to anticipate the criminal acts of third parties, it acknowledges that an exception to this rule exists when the criminal acts are foreseeable. *Id.* at 41. *See* Prosser, *Handbook of the Law of Torts* § 33 (4th ed. 1971); Restatement (Second) of Torts §§ 302B & 449 (1965). The Court believes the instant case falls within this exception. DePasse states that he purchased the alarm in order to deter auto theft. DePasse Dep., at 71. Although Triangle could not reasonably be held to a duty to prevent auto theft, it certainly has a duty to install auto alarms in a manner that activates whatever deterrent capacity the alarm may have. Because negligent installation of the alarm reduces its deterrent capacity, any negligence by Triangle would have increased the risk that foreseeable criminal conduct would be successful.

Section 302B of the Restatement (Second) of Torts states that "[a]n act ... may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the [criminal conduct of a third party]." Lenox correctly states that Triangle knew or should have known that negligent installation would increase the risk of auto theft. As Restatement (Second) § 449 comment (b) observes, "[t]o deny recovery because the other's exposure to the very risk from which it was the purpose of the duty to protect him resulted in harm to him, would be to deprive the other of all protection and to make the duty a nullity." Triangle cannot escape liability merely by asserting that it had no duty to deter auto theft because that is the very risk against which the auto alarm was intended to protect. Moreover, the imposition of a duty to properly install

alarm systems does not make Triangle an insurer against theft, but merely serves to expose a negligent party to the damages proximately flowing from his breach of duty.

But Triangle's duty to properly install auto alarms to deter auto theft does not necessarily imply that it has a duty to protect against other risks or hazards. Restatement (Second) of Torts § 281 (1965) explains that the scope of a defendant's duty extends only to protection against certain risks. Comment (e) explains that "the duty established by law to refrain from the negligent conduct is established in order to protect the other from the risk of having his interest invaded by harm resulting from one or more of this limited number of hazards."

Although Illinois courts have described the scope of a defendant's duty in different ways, they often couch it in terms of foreseeability—though foreseeability of a particular kind of hazard is a consideration in determining not only the scope of duty, but in finding proximate cause as well. *See e.g. Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill.2d 378, 98 Ill.Dec. 1, 493 N.E.2d 1022 (1986) (confirming that the lower court's finding of foreseeability of damages and consideration of relevant policy factors was proper in finding duty); *Cunis v. Brennan*, 56 Ill.2d 372, 308 N.E.2d 617 (1974) (observing that the duty issue is broad in its implication and that foreseeability is but one consideration); *Drobney v. Federal Sign & Signal Corp.*, 182 Ill.App.3d 471, 131 Ill.Dec. 833, 539 N.E.2d 186 (4th Dist.) (stating that foreseeability is a consideration under either duty or proximate cause analysis), *appeal denied*, 127 Ill.2d 614, 136 Ill.Dec. 584, 545 N.E.2d 108 (1989); *American Centennial Insurance Co. v. Wells Fargo Alarm Services*, 152 Ill.App.3d 503, 105 Ill.Dec. 457, 504 N.E.2d 742 (1st Dist.1986) (discussing that social policy considerations and "highly foreseeable" damages militate in favor of finding duty); Comment on Restatement (Second) of Torts § 435(2) (1965) (noting that questions of the hazards against which defendant has a duty to protect are often recast as issues of causation).

Considerations of foreseeability alone are insufficient grounds for the imposition of duty. *Cunis v. Brennan*, 56 Ill.2d 372, 308 N.E.2d 617 (1974). In addition to foreseeability, the court must weigh public policy concerns including "the likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing [the duty] upon the defendant." *Lance v. Senior*, 36 Ill.2d 516, 518, 224 N.E.2d 231, 233 (1967); *Nelson v. Commonwealth Edison Co.*, 124 Ill.App.3d 655, 662, 80 Ill.Dec. 401, 407, 465 N.E.2d 513, 519 (2d Dist.1984).

Regarding foreseeability, "[i]t is generally accepted that where the plaintiff's injury resulted from the same [causes] whose existence required the same exercise of greater care than was displayed and were of the same general sort expectable, unforeseeability of exact developments and of the extent of loss will not limit liability." *Nelson*, 80 Ill.Dec. at 406, 465 N.E.2d at 518. In *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill.2d 378, 98 Ill.Dec. 1, 493 N.E.2d 1022 (1986), tenants damaged by a fire which spread from adjoining premises brought suit against the adjoining tenant, Montgomery Wards, and Burns Electric Security Services ("Burns"), which had installed and maintained Montgomery Wards's fire alarm system. Burns argued that the appellate court erred in imposing a duty to guard against fire damage of adjacent tenants in the same storage facility. The Illinois Supreme Court rejected this contention and pointed to the appellate court's statement that the losses were "highly foreseeable" under the circumstances. 98 Ill.Dec. at 5, 493 N.E.2d at 1026. A similar approach was taken in *American Centennial Ins. Co. v. Wells Fargo Alarm Services*, 152 Ill.App.3d 503, 105 Ill.Dec. 457, 504 N.E.2d 742 (1st Dist. 1986), which held that a burglary-alarm company owed a duty of care to a business that had bailed property to a pawn shop.

In this case, the Court believes that due to the magnitude and character of the plaintiff's injury, it was not "of the same general sort expectable" by the breach of

the defendant's duty of care. Based on the facts in this case and the commercial context in which the loss occurred, it was not foreseeable that Lenox's agent would store an inventory of jewelry samples with a wholesale value of approximately $125,000 in the trunk of his car. In contrast to the risk of property damage by fire in *Scott & Fetzer*, and the risk of theft in *American Centennial*, the loss of valuable jewelry was not "highly foreseeable" under the circumstances because it was never disclosed to Triangle that its alarm was to protect valuable commercial property. Thus, in the language of the Restatement (Second) of Torts § 281 (1965), the risk of theft of a set of jewelry samples was not one of the "hazards" against which defendant could reasonably be expected to protect.

The Court, of course, accepts that in "the majority of cases, where varying inferences are possible from the facts, a court should permit the jury to decide the foreseeability issue ... as a factual matter in its proximate cause determination." The Court further accepts the principle that foreseeability, as it relates to duty, "is a determinative consideration only where a particular occurrence is so extreme that, as a policy decision, it would be unwise to require defendant to guard against it." *Nelson*, 80 Ill.Dec. at 407, 465 N.E.2d at 519.

Turning to the three core policy considerations enumerated above—the likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing the duty upon the defendant— the Court follows the reasoning of *Scott & Fetzer*, 98 Ill.Dec. 1, 5, 493 N.E.2d 1022, 1026, in which the Illinois Supreme Court held that the magnitude of the burden of guarding against the injury was not to be confused with the defendant's potential exposure to liability from breach of his duty. *Id.* 98 Ill.Dec. at 5, 493 N.E.2d at 1026. Thus, the magnitude of the burden of guarding against failure of the alarm system amounts to no more than the exercise of due care in the installation of the alarm. Therefore, the second factor does not militate against the finding of a duty of care.

However, examination of the remaining two factors supports this Court's conclusion that Triangle did not have a duty to prevent the theft of plaintiff's jewelry samples. First, and related to the issue of foreseeability, the risk that a salesman would regularly store valuable jewelry samples in the car appears remote. It is likely that the proportion of auto alarms purchased with the undisclosed intent of protecting valuable commercial interests is not sufficiently large, when considered with other factors, to justify the imposition of a duty upon the seller to protect such interests as a matter of law.

Second, requiring defendant to protect against the theft of valuable commercial property would not only have the consequence of exposing it to substantial (indeed, virtually unlimited) liability, but also would discourage commercial users of auto alarms from disclosing that they intend to use the alarm to protect commercial property of substantial value. After all, why should a customer inform the alarm company of the magnitude of the risk it is being hired to protect against, when damages in tort can be had regardless of disclosure?

Taking into account these sorts of policy concerns is vital in determining whether a duty of care arises, as demonstrated by the Seventh Circuit's decision in *Rardin v. T & D Machine Handling, Inc.*, 890 F.2d 24 (7th Cir.1989). In *Rardin*, the court of appeals held that the purchaser of a printing press could not recover in tort from a company hired by the seller to dismantle and load the press, because the press handler, though negligent, was under no duty of care to the plaintiff. *Id.* at 25, 30. Plaintiff had sought lost profits arising from the delay in putting the press into use. *Id.* at 26. Although the court of appeals assumed that causation was no issue, it concluded that the unforeseeability of the potential magnitude of damages made imposition of a duty unwise. "In deciding how much effort to expend on being careful—and therefore how far to reduce the probability of a careless accident—the potential injurer must have at least a rough idea of the extent of liability." *Id.* The court further reasoned that in the context of commercial activities, it is

sound policy to encourage parties to bargain about who should bear the risk of loss. *Id.* at 28–29. To permit a "tort end-run" around the contract-law limitation on consequential damages would discourage open and straightforward negotiations to determine the allocation of risk and the payment that would be appropriate in light of that allocation. *Id.* As the court of appeals noted, "it is in contractual settings that the potential victim ordinarily is best able to work out alternative protective arrangements and need not rely on tort law." *Id.* at 29.

Similarly, in this case, had Triangle been informed that the alarm was intended to safeguard valuable commercial property, it likely would have negotiated a higher price for its services, or insisted on a more detailed contractual limitation on its potential liability. Forbidding tort recovery here would treat both parties even-handedly, for if Triangle is to insure Lenox's commercial property, it is entitled to have Lenox "compensate it accordingly." *Id.* at 30. Indeed, were Lenox's theory of liability permissible, there is no reason that Triangle's liability should be limited to $125,000; Lenox could have had its agent carry samples worth $1,250,000, or even $1,250,000,000, for that matter, with any loss (in theory) to be picked up by Triangle should one of Triangle's agents prove to have been careless. It is the teaching of *Rardin* that contract law governs recovery here.

Therefore, the Court holds that Triangle did not have a duty to protect Lenox against the theft of jewelry samples because Lenox's agent, DePasse, did not disclose the type and potential value of the property which he intended the alarm to protect. Summary judgment is granted on Count III of the complaint.

## CONCLUSION

For the reasons set forth above, the Court grants summary judgment in favor of Triangle and against Lenox on Counts I, II and III of the complaint.