WORLD TRADE KNITTING MILLS, INC., et al., Respondents, v LIDO KNITTING MILLS, INC., et al., Respondents, and HONEYWELL, INC., Appellant.

Second Department, February 20, 1990

## APPEARANCES OF COUNSEL

*Hinckley & Silbert, P. C. (Michael B. Sena* of counsel; *Wickens, Hare, Koches & Cale [Brendan M. Hare* and *David B. Chaffin]* on the brief), for appellant.

*Speyer & Perlberg (Ellen M. Hoffer* of counsel), for World Trade Knitting Mills and another, respondents.

*Leon Traube* for Lido Knitting Mills, Inc., and another, respondents.

## OPINION OF THE COURT

BALLETTA, J.

The defendant Lido Knitting Mills, Inc. (hereinafter Lido),

of which the defendant Bernard Goldglancz is an officer, operates an apparel manufacturing facility at 694 Metropolitan Avenue in Brooklyn. The defendant Honeywell, Inc. (hereinafter Honeywell) is engaged in the business of installing and servicing burglar and fire alarm systems. Lido and Honeywell executed an "Installation and Service Agreement" on May 30, 1978, whereby Honeywell agreed to install and maintain a "central station fire alarm" at Lido's manufacturing facility. The alarm was designed to transmit a signal to Honeywell's monitoring office in the event that Lido's sprinkler system was activated. However, when, on February 15, 1986, a fire occurred at Lido's facility, causing extensive damage to the building and its contents, the alarm system failed to function as intended.

The plaintiffs commenced the instant action alleging that they had delivered certain property "consisting of raw materials to be processed into finished goods" to Lido prior to February 15, 1986, and that this property had been damaged as a result of the fire and the activation of the sprinkler system. The complaint set forth four causes of action against Lido and Goldglancz sounding in negligence and gross negligence, and two causes of action against Honeywell sounding in breach of contract. The plaintiffs alleged that they were third-party beneficiaries of the contract between Lido and Honeywell. Lido and Goldglancz cross-claimed against Honeywell for indemnification and contribution.

Honeywell moved for summary judgment dismissing the complaint insofar as it is asserted against it on the grounds that (1) no triable issues of fact exist since it owed no legal duty to plaintiffs, and (2) it was not liable to the plaintiffs or to the codefendants due to the contract's exculpatory clause, or, alternatively, its liability was limited in any event to $348 according to the limitation of liability provision contained in the contract. In support of the motion, Honeywell claimed that the agreement explicitly negated any intent to confer any contractual rights upon third parties. Hence, Honeywell asserted, the plaintiffs' cause of action against it should be dismissed as a matter of law since the plaintiffs were merely incidental beneficiaries of the contract. Additionally, Honeywell argued that, even if it owed a legal duty to the plaintiffs, their rights were circumscribed by the contract's exculpatory clause or, alternatively, by the liability cap provided therein.

The plaintiffs cross-moved for further discovery, and for leave to serve an amended complaint including an allegation

of gross negligence by Honeywell. The plaintiffs' proposed amended complaint would have added a seventh and eighth cause of action against Honeywell alleging, *inter alia:* "The aforesaid fire and resulting damages to plaintiff [World Trade Knitting Mills, Inc.] were caused solely through the gross negligence of defendant HONEYWELL, in failing to perform its contractual duties and through its recklessness and wilful acts and omissions". As to their third-party party beneficiary theory, the plaintiffs reiterated their contentions that Honeywell "knew or should have known [they] would rely on [its] representations for fire and sprinkler alarm protection" and claimed that "Honeywell was to perform its services directly for the protection of third party property in the custody of Lido".

In the order appealed from, Supreme Court, Kings County, denied Honeywell's motion for summary judgment, without opinion. The court failed to address that branch of the plaintiffs' cross motion which was for leave to serve an amended complaint.

■ ■ We would reverse insofar as appealed from, grant Honeywell's motion for summary judgment, and dismiss the complaint insofar as it asserted against it and dismiss the cross claim as against it. The plaintiffs have not raised any triable issues of fact relative to their purported status as third-party beneficiaries of the Honeywell-Lido agreement, nor have they presented any question as to whether Honeywell committed any affirmative acts of misfeasance to support their proposed tort claims. In any event, it has not been shown that Honeywell's alleged conduct rose to such a level as to constitute gross negligence; therefore, the plaintiffs' causes of action against Honeywell and the cross claim against it are barred by the exculpatory clause contained in the contract.

It is well established that summary judgment will only be granted if there are no material and triable issues of fact *(see, Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404)*. Once the moving party has made a prima facie showing of being entitled to summary judgment, the burden shifts to the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action *(see, Alvarez v Prospect Hosp.,* 68 NY2d 320, 324)*. Thus, it is imperative that a plaintiff opposing a defendant's motion for summary judgment "assemble, lay bare and reveal his proofs, in order to show that the matters set up in his [complaint] are real and are

capable of being established upon a trial" *(Di Sabato v Soffes,* 9 AD2d 297, 301). However, "only the existence of a bona fide issue raised by evidentiary facts and not one based on conclusory or irrelevant allegations will suffice to defeat summary judgment" *(Rotuba Extruders v Ceppos,* 46 NY2d 223, 231), and mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient *(see, Zuckerman v City of New York,* 49 NY2d 557, 562).

The plaintiffs and Honeywell's codefendants have failed to come forth with any evidentiary proof in admissible form which would justify the denial of Honeywell's motion for summary judgment. At most, they have only set forth conclusory allegations, unsubstantiated assertions, and mere expressions of hope.

█ First, the plaintiffs' contentions that they were third-party beneficiaries of the contract between Lido and Honeywell must be rejected. This court has adopted the following principles with respect to the law of third-party beneficiaries: "A third party may sue as a beneficiary on a contract made for his benefit *(Lawrence v Fox,* 20 NY 268). The intent to benefit a third party must be shown *(Port Chester Elec. Constr. Corp. v Atlas,* 40 NY2d 652; *Beveridge v New York El. R. R. Co.,* 112 NY 1) and the benefit must not be merely incidental but immediate to such a degree as to indicate the assumption of a duty to make reparation if the benefit is lost *(Associated Flour Haulers & Warehousemen v Hoffman,* 282 NY 173; *Moch Co. v Rensselaer Water Co.,* 247 NY 160). Absent such intent, the third party is merely an incidental beneficiary with no right to enforce the contract *(Port Chester Elec. Constr. Corp. v Atlas, supra; Associated Flour Haulers & Warehousemen v Hoffman, supra; Moch Co. v Rensselaer Water Co., supra; Flemington Nat. Bank & Trust Co. [N. A.] v Domler Leasing Corp.,* 65 AD2d 29). An incidental beneficiary is a third party who may derive benefit from the performance of a contract though he is neither the promisee nor the one to whom performance is to be rendered (2 Williston, Contracts [3d ed], § 402). While it is not necessary that a third-party beneficiary be identified or even identifiable at the time that the contract is made, he has no right to enforce the contract himself until such time as he is identified *(Matter of Associated Teachers of Huntington v Board of Educ.,* 33 NY2d 229). A party, claiming to be a third-party beneficiary, has the burden of demonstrating that he has an enforceable right *(Flemington Nat. Bank & Trust Co. [N. A.] v Domler Leasing Corp., supra)"* (Airco Alloys

*Div. v Niagara Mohawk Power Corp.,* 76 AD2d 68, 79; *see, Strauss v Belle Realty Co.,* 98 AD2d 424, 426-427, *affd* 65 NY2d 399; *see also, Fourth Ocean Putnam Corp. v Interstate Wrecking Co.,* 66 NY2d 38, 43-45; *Key Intl. Mfg. v Morse/ Diesel, Inc.,* 142 AD2d 448, 455-457).

The courts, based upon the above-established principles, have consistently dismissed assertions of third-party beneficiary status made by nonparties to contracts for alarm systems *(see, e.g., Nieves v Holmes Protection,* 56 NY2d 914, 916; *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.,* 149 AD2d 652, *lv granted* 75 NY2d 702; *Northbrook Prop. & Cas. Ins. Co. v D.J.L. Warehouse Corp.,* 146 AD2d 574; *Corporate Leasing v AFA Protective Sys.,* 101 AD2d 768; *cf., Appliance Assocs. v Dyce-Lymen Sprinkler Co.,* 123 AD2d 512, 513). Security system contractors have not been held liable to injured parties that claim to be third-party beneficiaries of such contracts *(see, e.g., Bernal v Pinkerton's, Inc.,* 41 NY2d 938, *affg* 52 AD2d 760; *Paradiso v Apex Investigators & Sec. Co.,* 91 AD2d 929).

In the instant case, Honeywell's motion was supported by affidavits which established that Honeywell had no intention of conferring a benefit on the plaintiffs, and Mr. Goldglancz, in his affidavit, failed to assert that either he or Lido had any such intent. The wholly conclusory assertion made by Richard Brach, the president of the plaintiff World Trade Knitting Mills, Inc., that the contract was intended for the benefit of his corporation, is without evidentiary value. Furthermore, his assertion that he relied upon the Honeywell contract is belied by his testimony at an examination before trial where he stated that he was unaware of any contract for an alarm system until after the fire. Accordingly, Honeywell has established its entitlement to summary judgment dismissing the plaintiffs' two causes of action against it sounding in breach of contract *(see also, Tuthill v City of Rochester,* 32 AD2d 873, *affd* 27 NY2d 558; *Tidy House Paper Prods. v Automatic Fire Alarm Co.,* 281 App Div 1036).

■ Moreover, there is nothing in the record which would support the causes of action sounding in negligence asserted against Honeywell in the plaintiffs' proposed amended complaint. It is well settled that "[t]he courts may examine the sufficiency of the pleadings on a motion to amend to determine if a claim is patently deficient and decide the issue as a threshold matter to avoid the possibility of needless litigation *(see, Sharapata v Town of Islip,* 82 AD2d 350, 362, *affd* 56

NY2d 332; *General Motors Acceptance Corp. v Shickler,* 96 AD2d 926)" *(Fiesel v Nanuet Props. Corp.,* 125 AD2d 292).

Honeywell's argument with respect to any potential tort cause of action is founded on its assertion that its alleged conduct constituted only "nonfeasance" rather than "misfeasance". Since, Honeywell contends, its duty of care was imposed by contract, rather than by law, it should be held immune from tort liability to the plaintiffs pursuant to the general rule that "failure to perform [a contract] at all is a nonfeasance which constitutes no more than a breach of contract actionable only by one in privity of contract" *(Hamill v Foster-Lipkins Corp.,* 41 AD2d 361, 362-363; *see also, Rozner v Resolute Paper Prods. Corp.,* 37 AD2d 396, 398, *affd* 31 NY2d 934; *Rosenbaum v Branster Realty Corp.,* 276 App Div 167; 1A Warren, Negligence, Actionable Negligence, § 3.05 [1]). There is more than ample support for Honeywell's position in the case law.

The alleged misconduct of Honeywell includes: (1) failure to notify the New York City Fire Department upon receipt of a signal, (2) failure to respond to the premises upon receipt of an alarm signal, (3) failure to inspect the alarm system, and (4) failure to install the alarm system. Similar conduct has been construed as merely nonfeasance as opposed to misfeasance.

In *Eaves Brooks Costume Co. v Y.B.H. Realty Corp.* (149 AD2d 652, *supra),* the plaintiff, which was in the business of renting and selling theatrical costumes, allegedly suffered extensive losses when, as a result of a faulty sprinkler system, a large amount of water was released destroying the costumes it had stored in warehouse of the defendant Y.B.H. Realty Corp. An alarm system, which was supposed to issue a warning when the sprinkler was activated, proved defective and failed to work. The defendants New York Automatic Sprinkler Service Co. and Wells Fargo Alarm Services had entered into contracts with Y.B.H. Realty Corp. to inspect the sprinkler and alarm systems. The plaintiff was not a party to these contracts. This court unanimously held that the defendants New York Automatic Sprinkler Service Co. and Wells Fargo Alarm Services were entitled to summary judgment dismissing the complaint insofar as it is asserted against them, stating: "The appellants' alleged failure to properly and timely inspect the sprinkler and alarm systems were examples of nonfeasance, not of misfeasance. A plaintiff cannot recover in the absence of privity where an affirmative act of negli-

gence has not been committed *(see, Melodee Lane Lingerie Co. v American Dist. Tel. Co.,* 18 NY2d 57)" *(Eaves Brooks Costume Co. v Y.B.H. Realty Corp., supra,* at 653).

Just a few months prior to deciding the *Eaves Brooks Costume Co.* case *(supra)* this court made a similar decision in a case involving a burglar alarm system. In *Northbrook Prop. & Cas. Ins. Co. v D.J.L. Warehouse Corp.* (146 AD2d 574, *supra),* the defendant Holmes Protection, Inc., contracted with the defendant D.J.L. Warehouse Corp. to install and maintain a burglar alarm system. The plaintiff AP Enterprises stored electronic equipment in the warehouse of D.J.L. Warehouse Corp. which was subsequently burglarized. This court affirmed an order granting the motion of Holmes Protection, Inc., for summary judgment dismissing the complaint on the grounds that: "nothing in the contract suggests that the parties intended to confer a direct benefit on the purported third-party beneficiary * * *. Furthermore, there was no duty owing from Holmes to AP. Holmes's purported dereliction was in the nature of nonfeasance, i.e., the failure to repair the alarm system rather than misfeasance, i.e., negligent performance. Hence, it incurred no liability toward AP, an unintended and incidental beneficiary of the contract" *(Northbrook Prop. & Cas. Ins. Co. v D.J.L. Warehouse Corp., supra,* at 574-575; *see also, Haigler v City of New York,* 135 AD2d 362, 363 ["Defendant MAG (the security company) owed no duty to plaintiff (a nonparty to the contract) which would support a claim of tort liability, since its alleged dereliction was in the nature of nonfeasance, i.e., the failure to prevent the injury pursuant to its agreement, rather than misfeasance or negligent performance"]; *Appliance Assocs. v Dyce-Lymen Sprinkler Co.,* 123 AD2d 512, *supra* [failure of alarm company to receive or to properly respond to the alarm which should have resulted from the activation of the sprinkler system constituted nonfeasance rather than misfeasance]; *Corporate Leasing v AFA Protective Sys.,* 101 AD2d 768, *supra* [same]; *Tidy House Paper Prods. v Automatic Fire Alarm Co.,* 281 App Div 1036, *supra* [same]).

The instant case falls squarely within the principles set forth by the above line of cases. Here, Honeywell's alleged acts of negligent conduct—whether they be a failure to inspect the alarm system, a failure of the alarm to sound when the sprinkler system activated, a failure to respond to the fire alarm, or even an alleged failure to install an alarm system— all constitute nonfeasance rather than misfeasance. Accord-

ingly, Honeywell was not liable to the plaintiffs herein *(see also, Steiner Corp. v American Dist. Tel.,* 106 Idaho 787, 683 P2d 435).

Moreover, any reliance upon the Restatement (Second) of Torts §§ 323 and 324 A, is misplaced. The principle underlying the Restatement position is that when a promisor undertakes to perform a duty assumed in the contract, liability may arise to one not a party to the contract who is injured by the promisor's failure to perform that duty with reasonable care *(see, Rozner v Resolute Paper Prods. Corp., supra).* However, in the absence of at least an attempt to perform the contract, there can be no violation of the legal duty *(see, Rosenbaum v Branster Realty Corp., supra).* The failure to perform constitutes nonfeasance which is no more than a breach of contract actionable only by one in privity of contract *(see, Hamill v Foster-Lipkins Corp., supra).* In other words, if the promisor does nothing, he cannot be held liable in tort to a third party *(see,* 1A Warren, Negligence, Actionable Negligence, § 3.05 [1]).

This conclusion was reached in *Steiner Corp. v American Dist. Tel. (supra),* which held that a complaint asserting that an alarm company had failed to properly perform its duty to inspect and maintain a fire alarm system clearly alleged mere nonfeasance, and the court rejected the argument that the Restatement controlled. It ruled that the complaint failed to state a cause of sounding in the negligent performance of an undertaking to render services because it spoke in terms of a failure to perform the undertaking rather than the negligent performance of the undertaking.

In any case, the contract between Lido and Honeywell contained exculpatory and limitation of liability clauses as well as an indemnification provision. The clauses provided, in part:

"It is understood and agreed by the parties hereto that Contractor is not an insurer * * * [and] that the Contractor is not assuming responsibility for any losses which may occur even if due to Contractor's negligent performance or failure to perform any obligation under this Agreement * * *

"if, notwithstanding the above provisions, there should arise any liability on the part of the Contractor, such liability shall be limited to an amount equal to one half the annual service charge [$348]

"Subscriber agrees to and shall indemnify and save harmless the Contractor, its employees and agents, for and against

all third party claims, lawsuits and losses alleged to be caused by the improper operation of the system, whether due to defects in the system or acts or omissions of the Contractor in receiving and responding to alarm signals".

Such clauses in other alarm system contracts have been upheld by the courts. In *Antical Chems. v Westinghouse Sec. Sys.* (86 AD2d 768), where the court was confronted with a situation very similar to the one before this court, it held that General Obligations Law § 5-323 does not apply to a fire alarm contract since "contracts for installing and maintaining alarm systems are not contracts 'affecting real property' or for 'services rendered in connection with the construction, maintenance and repair of real property' " *(Antical Chems. v Westinghouse Sec. Sys., supra,* at 769).

Similarly, in *Appliance Assocs. v Dyce-Lymen Sprinkler Co. (supra),* involving the failure of an alarm to detect a break in a sprinkler system, the court determined that the limitation of liability clause in the alarm system contract was not barred by the analogous provisions of General Obligations Law § 5-322.1 since "such contracts bear no relation to the construction, alteration, repair or maintenance of a building" *(Appliance Assocs. v Dyce-Lymen Sprinkler Co., supra,* at 513; *see also, Failla v A.F.A. Protective Sys.,* 139 AD2d 693, wherein this court rejected an argument that General Obligations Law § 5-323 prohibited an indemnification clause in a sprinkler and alarm system contract).

The exculpatory clause in Honeywell's contract with Lido is not violative of General Obligations Law § 5-323, and is binding upon and bars recovery against Honeywell by the plaintiffs and the codefendants *(see,* 22 NY Jur 2d, Contracts, § 281; *Northbrook Prop. & Cas. Ins. Co. v D.J.L. Warehouse Corp.,* 146 AD2d 574, *supra)* in the absence of any evidence of gross negligence on the part of Honeywell.

Further, neither the plaintiffs nor the codefendants have come forth with sufficient evidentiary proof to raise a bona fide triable issue of fact as to gross negligence which would defeat Honeywell's motion for summary judgment. Indeed, after comparing the allegations concerning Honeywell's failures in this case to allegations in prior similar cases, it is clear that only ordinary negligence and not gross negligence is asserted in this case.

In *Advance Burglar Alarm Sys. v D'Auria* (110 AD2d 860, 861), the landowner alleged that the alarm company " 'was

negligent in failing to provide appropriate repairmen and installation personnel * * * said equipment was negligently installed and maintained and functioning improperly * * * [and the alarm company] was negligent in failing to provide appropriate and timely guard response to the * * * premises' ". This court held that these allegations amounted to "only ordinary negligence, thus negating the argument that there is an issue of fact as to whether [the] alleged breaches fall within the ambit of the exculpatory clause" (*Advance Burglary Alarm Sys. v D'Auria, supra,* at 862-863). It should be noted that the allegations concerning Honeywell herein are very similar.

In *Sue & Sam Mfg. Co. v United Protective Alarm Sys.* (119 AD2d 664), the failure of the alarm company to install two motion detectors as required by the contract did not constitute gross negligence, and the exculpatory clause was therefore controlling. The failure of a guard responding to an alarm to find anything amiss was deemed to be only ordinary negligence in *Feldman Furs v Jewelers Protection Servs.* (134 AD2d 171), and in *Dubovsky & Sons v Honeywell, Inc.* (89 AD2d 993). Allegations that an alarm company failed either to receive or to properly respond to an alarm constituted only ordinary negligence in *Corporate Leasing v AFA Protective Sys. (supra).* Similarly, in *Sanif, Inc. v Iannotti* (119 AD2d 654), the alleged negligent failure to monitor and report a signal indicating an illegal entry was deemed to be ordinary negligence and the exculpatory clause was enforced (*see also, Fireman's Fund Ins. Co. v Morse Signal Devices,* 151 Cal App 3d 681, 198 Cal Rptr 756 [wherein a California appellate court, in an insurer's action against various alarm companies claiming subrogation to fire and burglary losses sustained by its insureds, determined that the insurer's allegations that the alarms either failed to send a signal or that the alarm company failed to respond to an alarm were insufficient to state a cause of action sounding in gross negligence which would allow recovery above that provided for in the liquidated damages provision of the alarm contracts]).

The recent case of *Gentile v Garden City Alarm Co.* (147 AD2d 124), decided by this court, is readily distinguishable since, in opposing the alarm company's motion for summary judgment, the plaintiffs submitted the affidavits of a security expert who specifically pointed out and explained in technical detail the allegedly grossly negligent manner in which the alarm company had set up the alarm system. Here, the

plaintiffs and the codefendants did not present any evidence, other than their own conclusory assertions, that Honeywell was negligent. They have " 'totally failed to present any evidence in admissible form which raises an issue of fact as to whether the defendant's conduct constituted gross negligence * * * [They] cannot rely on conclusory assertions of gross negligence, contained in the pleadings, to defeat a motion for summary judgment' " *(Nuri Farhardi, Inc. v Albany Ins. Co.,* 137 AD2d 429, 431).

Accordingly, in light of all the foregoing, the order appealed from should be reversed insofar as appealed from, the motion for summary judgment dismissing the complaint insofar as it is asserted against Honeywell and the cross claim against Honeywell should be granted, and the action against the remaining defendants should be severed.

LAWRENCE, J. (concurring in part and dissenting in part).

 For reasons stated therein, I agree with so much of the opinion of my colleague, Justice Balletta as holds that the Supreme Court erred in not granting that branch of the motion of the defendant Honeywell, Inc. which was for summary judgment dismissing the complaint insofar as asserted against it. However, as noted in the opinion of my colleague Justice Bracken, I find that there are triable issues of fact which preclude the granting at this juncture of that branch of the motion of the defendant Honeywell, Inc. which was for summary judgment dismissing the codefendants' cross claim.

Accordingly, the order should be modified, on the law, by deleting the provision thereof which denied that branch of the motion of the defendant Honeywell, Inc. which was for summary judgment dismissing the complaint insofar as it is asserted against it, and substituting therefor a provision granting that branch of the motion; as so modified, the order should be affirmed insofar as appealed from, without costs or disbursements, and the cross claim against Honeywell, Inc. should be deemed a third-party complaint.

BRACKEN, J. P. (concurring in part and dissenting in part). A majority of this court votes to grant summary judgment dismissing the plaintiffs' complaint against the defendant Honeywell Inc. (hereinafter Honeywell) on two grounds: first, that as a matter of law, any negligence on the part of Honeywell constituted "nonfeasance" rather than "misfeasance", and second, that as a matter of law, any negligence on the part of Honeywell was "ordinary" rather than "gross".

The distinction between "gross" negligence and "ordinary" negligence, as well as the distinction between "misfeasance" and "nonfeasance", should, under the particular circumstances of this case, be drawn by the trier of fact, rather than by the court. I therefore vote to uphold the Supreme Court's denial of summary judgment.

## I

■ Initially, I note my agreement with the opinion of Justice Balletta to the extent that it holds that, as a matter of law, the plaintiffs cannot be considered third-party beneficiaries of the contract between Honeywell and the codefendant Lido Knitting, Mills, Inc. (hereinafter Lido). However, the denial of summary judgment should be upheld if there appears, from the papers submitted, that the plaintiffs might have an unpleaded cause of action *(see, Alvord & Swift v Muller Constr. Co.,* 46 NY2d 276; *Ayala v V & O Press Co.,* 126 AD2d 229, 234; *Afco Time Payment v Security Ins. Co.,* 111 AD2d 634, 635; *Gee v Gee,* 113 AD2d 736).* The plaintiffs' submissions, read together with those of codefendant Lido, establish the existence of a cause of action sounding in negligence.

I do not agree with so much of Justice Balletta's opinion as holds that plaintiffs have no valid cause of action against Honeywell sounding in negligence. I recognize the general rule that the "failure to perform [a contract] at all is a nonfeasance which constitutes no more than a breach of contract actionable only by one in privity of contract" *(Hamill v Foster-Lipkins Corp.,* 41 AD2d 361, 362-363; *see also, Rozner v Resolute Paper Prods. Corp.,* 37 AD2d 396, 398, *affd* 31 NY2d 934; *Rosenbaum v Branster Realty Corp.,* 276 App Div 167; 59 NY Jur, Torts, § 17; 1A Warren, Negligence, Actionable Negligence, § 3.05 [1]). However, application of this rule to Honeywell in the present case is, in my view, unwarranted for two reasons: first, Honeywell's negligence cannot be held to consist of nonfeasance alone; and second, the rule is inapplicable where there is evidence that a party such as the plaintiff directly relied upon the contractual undertaking of a third party.

## A

It has been recognized in a wide variety of contexts that a party (such as Honeywell) who undertakes to perform a con-

tract may be liable in tort to noncontracting parties that rely to their detriment on the contractual undertaking *(see,* Restatement [Second] of Torts §§ 324 A, 323; *see also, Scott & Fetzer Co. v Montgomery Ward & Co.,* 112 Ill 2d 378, 493 NE2d 1022; *American Centennial Ins. Co. v Wells Fargo Alarm Serv.,* 152 Ill App 3d 503, 504 NE2d 742; *Danny's Cabinet Shop v G & M Fire Extinguisher Sales & Serv.,* 149 Ga App 215, 253 SE2d 802; *McClinton v Reid,* 391 So 2d 506 [La]; 1 Lee and Lindahl, Modern Tort Law § 3.40; 1 Frumer & Friedman, Products Liability § 2.02 [3], at 2-88). Several New York cases have recognized that the duty of a service contractor extends to those persons who might foreseeably rely on the proper performance of the service contract *(see, e.g., Wroblewski v Otis Elevator Co.,* 9 AD2d 294; *see also, D'Andria v County of Suffolk,* 112 AD2d 397, 399; *Miller v Higgins,* 57 AD2d 1010; *cf., Brooks v Gatty Serv. Co.,* 127 AD2d 553, 554-555; Annotation, *Breach of Assumed Duty to Inspect Property as Ground of Liability for Damage or Injury to Third Person,* 6 ALR2d 284 [1949]). More recently, the Court of Appeals has emphasized the importance of foreseeable reliance by noncontracting parties in defining the tort liability of contractors for economic losses *(see, Ossining Union Free School Dist. v Anderson LaRocca Anderson,* 73 NY2d 417). Of course, tort liability for personal injuries or property damages has always been more widely defined than tort liability for economic losses *(see, Key Intl. Mfg. v Morse/Diesel, Inc.,* 142 AD2d 448, 450-451).

The element of reliance has been crucial in defining the scope of the duty of a landlord to provide security services *(see, Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, 522-523 [adopting the rule of Restatement (Second) of Torts § 323 (b)]), and is also crucial in determining the scope of tort liability based on the negligent exercise by the State of its police powers *(see, Kircher v City of Jamestown,* 74 NY2d 251; *see also, Riss v City of New York,* 22 NY2d 579, 592 [Keating, J., dissenting]; *Schuster v City of New York,* 5 NY2d 75, 82; *Gannon Personnel Agency v City of New York,* 103 Misc 2d 60, 75).

Thus, the existence of detrimental reliance by a noncontracting plaintiff upon a defendant's contractual undertaking is critical to the determination of the scope of potential tort liability based upon the defendant's nonfeasance in the performance of a contract. In none of the cases cited in Justice Balletta's opinion did the courts address this issue, so that none of those cases is controlling *(see, e.g., Nieves v Holmes*

*Protection,* 56 NY2d 914, 916; *Northbrook Prop. & Cas. Ins. Co. v D.J.L. Warehouse Corp.,* 146 AD2d 574). Here, we have essentially unrebutted averments by the plaintiffs' representative that "[m]y company relied on Lido Knitting and Honeywell for full fire and sprinkler services". This officer further swore that "[w]ithout such protection [plaintiffs] would not have entrusted our property to Lido Knitting". If these assertions are proved at trial, and Honeywell knew or should have known of its reliance, then I believe that the plaintiffs may recover damages based on Honeywell's negligence.

## B

I also disagree with the proposition that Honeywell's actions in this case may be characterized, as a matter of law, as "nonfeasance". Honeywell installed the alarm system in question; it did not merely promise to do so. Both Lido and the plaintiffs had every right to think that the alarm would function properly, which it obviously did not. Furthermore, Honeywell sent inspectors to the premises in question on several occasions. Nevertheless, these inspectors failed to complete the task assigned them. There is an issue of fact as to why these inspectors could not gain access to the alarm.

The distinction between misfeasance and nonfeasance, which is of questionable theoretical merit *(see,* Prosser and Keeton, Torts § 92, at 660 [5th ed]; Bohlen, *The Moral Duty to Aid Others as a Basis of Tort Liability, Part I,* 56 U Pa L Rev 217, 219-220 [1908]) should be the basis for granting judgment as a matter of law only when it is clear that the allegedly negligent defendant did *nothing (see, e.g., Anderson v Radio Corp.,* 29 Misc 2d 611 [Bernard Meyer, J.]; *Rozner v Resolute Paper Prods. Corp.,* 37 AD2d 396, *supra).* Here, it is clear that Honeywell did *something:* it installed an alarm that later malfunctioned. Just *why* the alarm malfunctioned *(see, e.g., Landahl v Chrysler Corp.,* 144 AD2d 926, 927; *Narciso v Ford Motor Co.,* 137 AD2d 508; *Brandon v Caterpillar Tractor Corp.,* 125 AD2d 625, 626 [fact that product malfunctioned is circumstantial evidence of defect sufficient to preclude summary judgment]) is not clear.

## II

I also do not agree that the terms of Honeywell's contract result in its complete exemption from liability for ordinary negligence, although I do agree that the contract imposes a

valid limitation upon Honeywell's potential liability for ordinary negligence *to Lido.* The Court of Appeals dealt with this precise sort of alarm system in the case of *Melodee Lane Lingerie Co. v American Dist. Tel. Co.* (18 NY2d 57, 68-69) and held that the provisions of Real Property Law former § 235 (now General Obligations Law § 5-323) prohibit an alarm system contractor such as Honeywell from exempting itself from liability for ordinary negligence. However, the court went on to hold that the liability of such an alarm system company may be contractually limited, as it was in this case, provided that the subscriber is offered the option of obtaining increased limits on liability *(see also, 80-82 Greene St. Corp. v AFA Protective Sys.,* 100 Misc 2d 334, 337 [App Term]). In holding that Honeywell has completely exempted itself from liability, notwithstanding the holding in the *Melodee Lane* case, the opinion of Justice Balletta relies on cases which are distinguishable because they involve different types of alarm systems *(see, e.g., Florence v Merchants Cent. Alarm Co.,* 51 NY2d 793; *Feldman Furs v Jewelers Protection Servs.,* 134 AD2d 171, 172; *Antical Chems. v Westinghouse Sec. Sys.,* 86 AD2d 768).

It is also problematic to suggest that the terms of Honeywell's agreement with *Lido* may serve as a source for a limitation on Honeywell's liability to the *plaintiffs.* This issue was not addressed in the *Melodee Lane* case *(supra),* and I can see no basis for holding that a tort-feasor's liability to one party may be limited because of the content of his agreement with another party *(see, Scott & Fetzer Co. v Montgomery Ward & Co.,* 112 Ill 2d 378, 493 NE2d 1022, 1027, *supra; American Centennial Ins. Co. v Wells Fargo Alarm Serv.,* 152 Ill App 3d 503, 504 NE2d 742, *supra).*

Furthermore, even assuming that the terms of Honeywell's contract with Lido may properly furnish a limit on Honeywell's tort liability to the plaintiffs, the court is unanimous in observing that such a limitation would be of no effect if Honeywell is guilty of "gross" rather than "ordinary" negligence. While I recognize the existence of authority for the proposition that the question whether a particular species of negligence may be characterized as "gross" should be decided by the court, I nonetheless adhere to the view that, in most cases, whether a particular variety of negligence is or is not "gross" is paradigmatically a question of fact *(see, e.g., Gentile v Garden City Alarm Co.,* 147 AD2d 124). I note that in some cases which appear to be factually similar, it has been held

that this question should be reserved until after the completion of discovery *(see, e.g., Alter v Advance Alarm Co.,* 131 AD2d 406, 407; *Modern Settings v American Dist. Tel. Co.,* 121 AD2d 266, 269; *Pan Am. World Airways v Dennison Ticket Co.,* 117 AD2d 526, 527). Given the possibility that the evidence *might* ultimately show that Honeywell took a significant amount of money from Lido in return for its installation of a defective fire alarm system which it never cared to test or inspect, I am not prepared to state that no rational jury could conclude that Honeywell's negligence was "gross".

### III

■ Finally, I agree with Justice Lawrence that, assuming that the plaintiffs' action against Honeywell must be dismissed, it does not follow that Lido's cross claim against Honeywell should also be dismissed. Given the existence of the contract between Lido and Honeywell, this should be viewed as a case in which it is possible for a prime defendant (Lido) to seek contribution or indemnification from a third-party defendant (Honeywell), even though the latter might be found to owe no duty directly to the plaintiffs *(see, e.g., Garrett v Holiday Inns,* 58 NY2d 253).

I note that this result might be different if Honeywell had asserted, as a basis for its motion, the terms of its contract whereby Lido agreed to indemnify it (Honeywell) against claims made by third parties such as the plaintiffs. This issue was not raised and should not be reviewed upon a search of the record pursuant to CPLR 3212 (b) *(Conroy v Swartout,* 135 AD2d 945). It is therefore unnecessary to decide whether Honeywell would be entitled to summary judgment against Lido based upon a theory of contractual indemnification *(cf., Austro v Niagara Mohawk Power Corp.,* 66 NY2d 674, 676).

For the foregoing reasons, I vote to modify the order appealed from, on the law, by deleting the provision thereof which denied that branch of Honeywell's motion which was to dismiss the complaint insofar as it is asserted against it, and substituting therefor a provision granting that branch of the motion with leave to the plaintiffs to serve an amended complaint asserting causes of action against Honeywell sounding in negligence; as so modified, the order should be affirmed insofar as appealed from, without costs or disbursements.

HARWOOD, J., concurs with BALLETTA, J.; LAWRENCE, J., concurs in part and dissents in part in an opinion; BRACKEN,

J. P., concurs in part and dissents in part in a separate opinion in which EIBER, J., concurs.

Ordered that the order is modified, on the law, by deleting the provision thereof which denied that branch of the motion of the defendant Honeywell, Inc. which was for summary judgment dismissing the complaint insofar as it is asserted against it, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements, and the cross claim against Honeywell, Inc. is deemed a third-party complaint.