ANTHONY GENTILE et al., Respondents-Appellants, v GARDEN
CITY ALARM COMPANY, INC., Appellant-Respondent.

Second Department, May 22, 1989

### APPEARANCES OF COUNSEL

*Kirschenbaum & Kirschenbaum, P. C. (Kenneth Kirschenbaum* of counsel), for appellant-respondent.

*Speyer & Perlberg (Dennis M. Perlberg* of counsel), for respondents-appellants.

### OPINION OF THE COURT

MANGANO, J. P.

██ There are two issues to be resolved on the instant appeals, namely, (1) whether the plaintiffs supplied sufficient probative evidence in opposition to the defendant's motion for summary judgment to create a question of fact with respect to the defendant's gross negligence, and (2) assuming, arguendo, that the plaintiffs prevail at trial on the issue of gross negligence, whether the defendant validly limited its liability to the plaintiff to the amount of $250. In our view, the first question must be answered in the affirmative and the second question must be answered in the negative.

### I

The defendant Garden City Alarm Company is in the business of installing, servicing and monitoring alarm equipment. On November 23, 1984, it executed two agreements with the plaintiffs, who are homeowners of a one-family house in Elmont, New York. The first of these two agreements was a sales contract which required the defendant to install certain burglary alarm equipment in the plaintiffs' home. Pursuant to this agreement, the defendant was to "foil and contact all downstairs windows". One of the downstairs windows, i.e., the master bedroom window, was covered with sheetrock on the inside of the house and was therefore inaccessible for the placement of foil. At the time the alarm was being installed, the plaintiff Anthony Gentile expressed his concern about this window since it would be the only downstairs window without

foil. The defendant's president, in an attempt "to pacify" the plaintiffs, installed a wall vibrator on the inside wall behind the window "designed to detect vibration", even though he was of the view that the wall vibrator was not "necessary for proper protection". The sales agreement contained an exculpatory clause which provides in pertinent part as follows: "Seller is not assuming liability and, therefore shall not be liable to Buyer for any loss or damage sustained by Buyer as a result of burglary, theft, hold-up, equipment failure, fire, smoke, or any other cause whatsoever, regardless of whether or not such loss or damage was caused by or contributed to by Seller's negligent performance or failure to perform any obligation under this contract". The sales agreement also contained a limitation of liability clause which provides in pertinent part as follows: "Buyer agrees, that should there arise any liability on the part of the Seller as a result of Seller's negligent performance or failure to perform any of Seller's obligations under this contract, that Seller's liability shall be limited to the sum of $50.00. If Buyer wishes to increase Seller's maximum amount of Seller's limitation of liability, Buyer may, as a matter of right, at any time, by entering into a supplemental contract, obtain a higher limit by paying an annual payment consonant with Seller's increased liability. This shall not be construed as insurance coverage."

The second agreement executed by the parties on November 23, 1984, was a written central office monitoring agreement wherein the defendant agreed to install, lease, and monitor a central office transmitter. On April 21, 1986, the parties executed a third agreement, i.e., a written service agreement, wherein the defendant agreed to maintain the system in working order at a cost of $20 per month. Both the monitoring and service agreements contained exculpatory clauses similar to that contained in the sales agreement and also contained limitation of liability clauses limiting the defendant's liability to the sum of $250. The latter clauses respectively provide in pertinent part that:

"The parties agree that the alarm system is not designed or guaranteed to prevent loss by burglary, theft and other illegal acts of third parties, or loss by fire. If, notwithstanding the terms of this agreement or any other prior agreement between the parties pertaining to installation and servicing of alarm system, there should arise any liability on the part of the Lessor, such liability shall be limited to an amount equal to one half the yearly payment paid by Lessee at the time

such liability is fixed, or to the sum of $250.00, whichever is greater. If Lessee wishes to increase Lessor's maximum amount of such limitation of liability, Lessee may, as a matter of right, at any time, by entering into a supplemental agreement, obtain from Lessor a higher limit by paying an additional amount consonant with the increase of liability. This shall not be construed as insurance coverage."

"The parties agree that the security system is not designed or guaranteed to prevent loss by burglary, theft, and other illegal acts of third parties, or loss by fire. If, notwithstanding the terms of this agreement, there should arise any liability on the part of GCAC, such liability shall be limited to an amount six times the monthly payment paid by subscriber at the time such liability is fixed, or to the sum of $250.00, whichever is greater. If subscriber wishes to increase GCAC maximum amount of such limitation of liability, subscriber may, as a matter of right, at any time, by entering into a supplemental agreement, obtain from GCAC a higher limit by paying an additional amount for GCAC service proportioned to the increase in limitation of liability, but such additional obligation shall be in no way interpreted to hold GCAC as an insurer".

On June 6, 1986, the plaintiffs' home was burglarized. The burglars gained entry through the downstairs master bedroom window, by breaking the exterior glass of the window and cutting through the interior wall. They assaulted the plaintiffs' daughter who was home at the time, and stole $150,000 in valuables. The alarm did not sound in response to the forced entry.

On September 23, 1986, plaintiffs commenced the instant action against defendant seeking to recover damages in the amount of $150,000. The complaint alleged that the burglar alarm system was defective and inoperative due to defendant's gross negligence and that the burglary of June 6, 1986 would not have occurred had the alarm operated properly. Paragraph 12 of the complaint alleged that the plaintiffs' loss was caused by the defendant's "gross negligence and wanton conduct * * * in failing to perform its contractual duties and in willfully misleading the plaintiffs into believing that they were protected by a burglar alarm system when at no time was the relevant portion of the burglar alarm in operating condition". The plaintiffs further claimed that defendant "was grossly negligent in failing to test the burglar alarm to

discover that it was non-functional from the date of its installation".

In its answer dated October 8, 1986, the defendant raised nine affirmative defenses. The first, fourth and sixth affirmative defenses asserted that the defendant was not liable by virtue of the exculpatory clauses contained in the sales agreement, the central office monitoring agreement and the service agreement, respectively. In the second, fifth and seventh affirmative defenses, the defendant claimed that its liability was limited to $50, $250, and $250 pursuant to the limitation of liability clauses in the sales agreement, central office monitoring agreement and service agreements, respectively.

By motion dated May 20, 1987, defendant moved for summary judgment, based upon the exculpatory clauses contained in the three contracts, all of which relieved the defendant of liability for ordinary negligence. In support of the motion, the defendant submitted an affidavit from its president, who argued that the plaintiffs' allegations, even if true, did not rise to the level of gross negligence, as a matter of law.

In opposition to the defendant's motion, affidavits were submitted by the plaintiff Anthony Gentile, the plaintiffs' daughter, and Richard A. Lanese, a security consultant.

Anthony Gentile stated that defendant had agreed to install a vibration detector in the area of the master bedroom window which would set off the alarm if a burglar broke the window and tried to knock down the drywall covering the window on the inside of the house. Gentile stated further that the defendant: "misrepresented the protection I was receiving to induce me to purchase their system although they knew or should have known that I was not getting the protection I felt I needed most. I feel lied to and tricked by [the defendant] and I believe that a jury of my peers will agree that their conduct was gross negligence, if not fraudulent".

Valerie Gentile, the plaintiffs' daughter, submitted an affidavit stating that she had set the burglar alarm system to the "on" position the evening of the burglary when she was home alone.

Richard A. Lanese, Director of Security and Emergency Services for the Town of Hempstead, and a consultant in the security protection field, stated that he performed an analysis of the failure of the alarm system at plaintiffs' home. Lanese observed that the master bedroom window, through which the burglars gained entry, was the only window in the house that

did not have strips of metallic foil protection on it. He determined that this window was an inviting target for burglars since it was on the side of the house, obscured from view by shrubbery and a fence. Lanese stated further that: "It is my professional opinion as a security expert that there was no protection at all afforded to the north bedroom window by the system installed by the defendant. The alarm system installed by [the defendant] was programmed to ignore fast acting impulses or breaks in the circuit such as might be caused by passing traffic or a thunderstorm. The vibration detector installed to protect the north bedroom window was designed to send an extremely fast impulse, just the kind that the system would ignore. In order to have the vibration detector 'trip' the alarm system that was installed by the defendant a device known as a 'pulse stretcher' must be installed with the sensor in order to stretch the pulse to a sufficient length to trip the system and activate the alarm. Without a pulse stretcher, the placement of a sensor on this window was a meaningless gesture". Lanese was also of the view that since the master bedroom window was the only window in the house not protected by foil: "[w]hen this house was being 'cased' by burglars, they would note with relief that there was this one window with no apparent protection. And that the north bedroom window would be the most likely point of attempted entry". Lanese further opined that: "the placement of a functioning vibration detector on this window is not something that was necessary simply to 'pacify' a client. It was, in my opinion, the area of the Gentile home that most required alarm protection". Lanese concluded that the defendant "either failed to test the system or upon testing it and determining that the vibration detector did not work, [it] concealed this fact from Mr. Gentile in order to 'pacify' him and make a sale". Lanese emphasized that (1) laymen such as the plaintiffs "would have no way of knowing how to test a vibration detector", (2) "the need for a pulse stretcher or a fast acting circuit when using a sensor such as was used herein by the defendant, is common knowledge in the alarm industry", and (3) the defendant's failure to include such a device and properly install the sensor to afford protection to the master bedroom window, and to test the system to assure it was functioning, constituted gross negligence.

In a reply affirmation, the defendant argued that even if the

allegations in the complaint could be construed to amount to gross negligence, its liability was limited to the sum of $250.

By order dated October 2, 1987, the Supreme Court, Nassau County, denied the defendant's motion for summary judgment based upon the exculpatory clauses in its contracts with the plaintiff, on the grounds that (1) a party cannot exculpate itself from gross negligence, and (2) there were issues of fact with respect to whether the defendant's conduct, or failure to act, constituted gross negligence.

With respect to the defendant's claim that as a matter of law no causal relationship existed between plaintiffs' damages and the defendant's allegedly wrongful acts, the Supreme Court held that: "it is impossible now to rule, as defendant urges, that the evidence at trial will be too speculative to permit the jury (if it finds the system not functional) to consider, for example, the manner in which the burglars operated and whether a properly working alarm system would have thwarted the burglary."

Finally, with respect to the limitation of liability clauses contained in the three agreements, the Supreme Court denied the defendant's motion "without prejudice to further application solely on the issue of whether the * * * clauses in the contracts herein are enforceable".

By notice of motion dated November 2, 1987, the defendant moved for summary judgment limiting the plaintiffs' recovery to the sum of $250, in accordance with the limitation of liability provisions in the monitoring and servicing agreements.

The Supreme Court denied the defendant's motion, holding that (1) the language in the three agreements, which was drafted by the defendant, did not specifically limit the defendant's liability in cases of gross negligence, and (2) in any event: "defendant's attempt to limit its liability for gross negligence to a monetarily insignificant sum should also be subject to strict scrutiny, particularly because the transaction at issue is not among sophisticated businesspeople, but rather a consumer transaction in which the plaintiffs were presented with a non-negotiable pre-printed form contract".

## II

■ It is well settled that absent a statute to the contrary, the public policy of New York does not prevent a burglar alarm company from completely exculpating itself from its

own negligence or limiting its liability for its own negligence, when the language of the relevant clause is sufficiently clear *(Florence v Merchants Cent. Alarm Co.,* 51 NY2d 793; *Gross v Sweet,* 49 NY2d 102; *Farhardi, Inc. v Albany Ins. Co.,* 137 AD2d 429; *Sanif, Inc. v Iannotti,* 119 AD2d 654; *Sue & Sam Mfg. Co. v United Protective Alarm Sys.,* 119 AD2d 664). However, the courts of this State have consistently held that public policy precludes the granting of an exemption from liability for grossly negligent acts *(Kalisch-Jarcho, Inc. v City of New York,* 58 NY2d 377; *Weld v Postal Telegraph-Cable Co.,* 210 NY 59). Accordingly, this public policy voids any provision in a burglar alarm contract which purports to grant an exemption from liability to the alarm company for grossly negligent acts *(Gross v Sweet, supra,* at 106; *Dubovsky & Sons v Honeywell, Inc.,* 89 AD2d 993, 994; *Modern Settings v American Dist. Tel. Co.,* 121 AD2d 266).

With respect to the definition of gross negligence, our Court of Appeals has held that the failure to exercise even "slight care" or "slight diligence" constitutes gross negligence *(Food Pageant v Consolidated Edison Co.,* 54 NY2d 167, 172; *Dalton v Hamilton Hotel Operating Co.,* 242 NY 481, 488; *Weld v Postal Telegraph-Cable Co., supra,* at 72). In a similar vein, the New York Pattern Jury Instructions state: "Gross negligence means a failure to use even slight care, or conduct that is so careless as to show complete disregard for the rights and safety of others" (PJI 2:10A [1988 Supp]). Viewed within this perspective, the affidavit of the plaintiff Anthony Gentile, and that of the plaintiffs' expert Lanese, clearly created a question of fact with respect to the issue of gross negligence which was for a jury to ultimately determine *(Rand & Paseka Mfg. Co. v Holmes Protection,* 130 AD2d 429).

Accordingly, the Supreme Court correctly denied the defendant's motion for summary judgment dismissing the complaint.

### III

The defendant next argues that should the exculpatory clause be determined to be inapplicable based on a finding of gross negligence by the trier of fact, its liability should nevertheless be limited to the sum of $250, as provided in the monitoring and service contracts that it executed with plaintiffs.

In this regard, the defendant attempts to distinguish

between a provision in a burglar alarm contract which exempts or completely exculpates the alarm company from liability for grossly negligent acts, which is concededly void, and a provision in a burglar alarm contract which only limits the alarm company's liability for grossly negligent acts, which the defendant argues is valid. No New York court has specifically considered whether a burglar alarm contract can properly limit an alarm company's liability for gross negligence. We are aware that both this court and the First Department have noted in dicta, that such a provision would be valid (see, Alter v Advance Alarm Co., 131 AD2d 406; Feldman Furs v Jewelers Protection Servs., 134 AD2d 171). However, we are not bound by the dicta in those cases, and, in any event, do not find it persuasive. Indeed, we are more persuaded by the holding of the court in Federal Ins. Co. v Honeywell, Inc. (641 F Supp 1560). In that case, the United Stated District Court for the Southern District of New York, in interpreting New York law, held that a burglar alarm contract could not, even in a commercial setting, properly limit the alarm company's liability for gross negligence. In Federal Ins. Co. v Honeywell, Inc. (supra), both parties argued that the contract limited the alarm company's liability for negligence to $834. The plaintiff disputed the alarm company's additional argument that the contract also limited its liability for gross negligence to $834. In holding in favor of the plaintiff on this issue, the court held that the "strong, indeed intractable, public policy [of New York] that favors making parties accountable for gross negligence" precluded the court from making a distinction between "complete exculpation" and a "limitation on liability" (Federal Ins. Co. v Honeywell, Inc., supra, at 1562, 1563).

Accordingly, the Supreme Court properly denied the defendant's motion for summary judgment limiting the plaintiff's recovery to $250.

We have reviewed the defendant's remaining argument and find it to be without merit.

BRACKEN, SPATT and BALLETTA, JJ., concur.

Ordered that the plaintiff's cross appeal from the order of the Supreme Court, Nassau County, dated October 2, 1987, is dismissed, as the plaintiff is not aggrieved by that order (see, CPLR 5511); and it is further,

Ordered that the orders of the Supreme Court, Nassau County, dated October 2, 1987 and March 2, 1988, are affirmed, with one bill of costs.