■ DAVID GUTTER FURS, Appellant, v JEWELERS PROTECTION SERVICES, LTD., Respondent.—Order and judgment (one paper), Supreme Court, New York County (Shirley Fingerhood, J.), entered on or about March 29, 1990, which granted defendant's motion for summary judgment dismissing the complaint, reversed, on the law, the motion is denied, and the complaint reinstated, without costs.

In October 1986, plaintiff-appellant, David Gutter Furs ("plaintiff"), a fur pelt business located at 218 West 29th Street in Manhattan, engaged defendant-respondent, Jewelers Protection Services, Ltd. ("defendant"), to design and install a burglar alarm system for its then newly-acquired premises. At the time, plaintiff had not yet taken occupancy of the premises, which consisted of a main floor and a mezzanine, and it was, therefore, a vacant space which defendant's agent examined and measured to determine the type of security system required.

Upon installation of a system known as a "Certified Central Station Burglar Alarm AA#2 Premises", plaintiff moved its entire inventory of fur pelts, which hung on steel racks, into the premises. No inspection was undertaken by defendant after plaintiff was in occupancy.

During the early morning hours of December 27, 1986, burglars gained access to plaintiff's business by making a large hole in a back wall, and stole fur pelts with an estimated value of $300,000. A report prepared by defendant that same date, notes that no alarm signals were transmitted during the burglary and that the system had not been dam-

aged. The report also observes that the system's sensors had been improperly directed and adjusted, and were set too low.

Plaintiff commenced this action seeking damages for alleged breach of the security services contract and negligence in defendant's performance thereunder. Defendant moved for summary judgment pursuant to CPLR 3212, citing exculpatory and limitation of liability clauses contained in the contract which, *inter alia,* disclaimed all warranties, express or implied, held defendant harmless against claims of negligence, and limited liability to a maximum of $250. On appeal, plaintiff challenges the grant of defendant's motion. We reverse.

As recently clarified by this Court in *Hanover Ins. Co. v D & W Cent. Sta. Alarm Co.* (164 AD2d 112), an exculpatory clause in a security alarm contract is generally enforceable, but will not apply to exempt a defendant from liability for willful or grossly negligent acts. *(See also, Sommer v Federal Signal Corp.,* 174 AD2d 440.) This rule does not necessarily end the inquiry, however, for the issue often becomes one of whether the facts alleged are legally sufficient to support a claim of gross negligence and thereby defeat a motion for summary judgment. It has been held, for example, that a plaintiff's reliance solely upon "conclusory assertions of gross negligence", will not defeat a motion for summary judgment. *(Sue & Sam Mfg. Co. v United Protection Alarm Sys.,* 119 AD2d 664, 665.) Claims which are supported by the affidavit of an expert, on the other hand, may raise issues of fact with respect to whether the defendant's actions constituted gross negligence. *(See, Gentile v Garden City Alarm Co.,* 147 AD2d 124, 131.)

In the case at bar, plaintiff submitted such an affidavit from Mark Wynn, an expert engaged to inspect the premises after the burglary, and to design and install a new alarm system. Wynn, who had worked in the field of security services since 1980, estimated that he had designed thousands of AA#2 system for premises in Manhattan and the greater New York area, and stated that his work met Underwriters Laboratory ("UL") standards. It was his opinion that the system installed in plaintiff's premises violated UL standards by failing to provide an adequate number of motion detectors. He stated that having the proper number of motion detectors was critical in an establishment such as plaintiff's where racks of merchandise created an obstruction producing "blind spots". The inadequate number of motion detectors had reduced the security system's protection to a "suboptimal level" and made

it "impossible for this system to have worked at [the] premises".

Plaintiff's expert further found that it was, in these premises, "vital to provide shock sensor protection to the wall", another measure neglected by defendant. On the basis of these deficiencies, Wynn determined that the system was not only "totally inadequate" to meet the needs of the business, but could not be classified as a "Certified AA#2 system". Wynn further stated that defendant's failure to inquire as to the nature of the business before designing the security system, and to inspect the premises after its installation, were substantial omissions in the performance of security work. Wynn concluded by characterizing the deficiencies in defendant's installation as "gross departure[s] from recognized professional standards for an alarm company" and opining that defendant "was grossly negligent in the installation and testing of the system installed."

In light of this record, it was error for the IAS part to find, as a matter of law, that plaintiff had failed to come forward with sufficient evidence of gross negligence to raise triable issues of fact and thus defeat defendant's motion for summary judgment. Unlike the plaintiffs in *World Trade Knitting Mills v Lido Knitting Mills* (154 AD2d 99, 110), upon which defendant heavily relies, it cannot be said that plaintiff herein made his own conclusory assertions of defendant's negligence and " ' "totally failed to present any evidence in admissible form which raises an issue of fact as to whether defendant's conduct constituted gross negligence" ' ". *(See, Gentile v Garden City Alarm Co., supra.)*

Nor does the language of paragraph 7 of the contract, quoted by the dissent, warrant the summary dismissal of plaintiff's claims. First the very applicability of this provision is in issue, since it refers to "change" in the system's sensitivity and area of coverage, not to its design and installation. Moreover, any relevant obligation this clause may have imposed upon plaintiff simply raises additional questions of fact regarding plaintiff's compliance therewith and, assuming a lapse on plaintiff's part, the extent to which comparative fault may be ascribed. Concur—Carro, Kupferman and Kassal, JJ.

Sullivan, J. P., and Wallach, J., dissent in a memorandum by Sullivan, J. P., as follows: In a complaint seeking $1,000,000 in compensatory damages, plaintiff, a fur pelt dealer, asserts two causes of action, one for breach of contract, the other for negligence, for a loss incurred as a result of a

burglary at its premises committed by an unapprehended third party on December 27, 1986. Thousands of pelts are alleged to have been taken. Pursuant to an October 6, 1986 written contract, defendant, at an initial cost of $1,000 and monthly charge of $120, agreed to install, maintain and monitor an electronics security system at plaintiff's premises for a term of five years.

The only question presented by this appeal is whether plaintiff had made a sufficient evidentiary showing to create an issue of fact as to defendant's alleged gross negligence. Since I conclude that this burden has not been met, I would affirm. Plaintiff's claim of gross negligence is based on his expert's opinion that defendant's "failure to inspect the premises after installation [of the system] and subsequent occupancy of the premises by [plaintiff], as well as the [im]proper directions and sensitivity of the equipment installed constituted a gross departure from recognized professional standards for an alarm company." The expert also stated that the equipment in place at the time of the burglary did not meet the minimum standards for a certified central station grade AA#2 alarm since it failed to include a sufficient number of sensors. According to the expert, two motion detectors on the main floor and two on the mezzanine were necessary because "the racks of furs [would] reduce the area of coverage of [every] motion detector to a suboptimal level."

The assertion that defendant was negligent in the manner of installation, in that it failed to ascertain how plaintiff would arrange his goods after he took occupancy or to conduct a post-installation inspection of the premises does not rise to the level of gross negligence—" 'a failure to use even slight care, or conduct that is so careless as to show complete disregard for the rights and safety of others' ". (*Gentile v Garden City Alarm Co.*, 147 AD2d 124, 131; *see also, Weld v Postal Telegraph-Cable Co.*, 210 NY 59, 72; *Food Pageant v Consolidated Edison Co.*, 54 NY2d 167, 172.) This kind of conduct is consistently viewed as ordinary negligence. *(See, e.g., World Trade Knitting Mills v Lido Knitting Mills,* 154 AD2d 99, 108-109, and cases cited therein.) The majority's analysis concluding that issues of fact exist completely trivializes the concept of gross negligence.

Moreover, pursuant to paragraph 7 of the installation and service agreement, plaintiff "underst[ood] that the sensitivity and area of coverage of 'space protection' devices may change, that [defendant] is unable to detect such changes, and, accordingly 'walk tests' in the area or areas of such coverage are

necessary to insure that adequate sensitivity is maintained." The latter provision makes it clear that defendant was not required to test the premises after plaintiff installed and stocked its fur racks but rather that the burden was on plaintiff to contract defendant if "walk tests" showed that modifications were necessary. Since the contract required plaintiff to make sure that, after the fur racks were installed and stocked, the system was still effective, it can hardly be asserted that defendant's failure to inspect the premises and make the appropriate modifications constituted " 'a failure to use even slight care, or conduct that is so careless as to show complete disregard for the rights and safety of others' ". *(Gentile v Garden City Alarm Co.,* 147 AD2d, *supra,* at 131.)