**Dennis ANUNZIATTA and Margaret Anunziatta, Plaintiffs,**

v.

**ORKIN EXTERMINATING CO., INC., Defendant.**

No. 00–CV–0811.

United States District Court, N.D. New York.

Nov. 16, 2001.

Carl G. Dworkin, of counsel, Albany, NY, for plaintiffs.

Orlando & Barbaruolo, PLLC, Ronald B. Orlando, of counsel, Albany, NY, for defendant.

McAVOY, District Judge.

### Memorandum—Decision & Order

Plaintiffs brought this action alleging negligence, gross negligence, and violations of General Business Law §§ 349, 350 against Orkin Exterminating ("Orkin"). The action arises out of the treatment of Plaintiffs' home by Orkin for termites. Before this Court are the parties' cross-motions for summary judgment. The Court heard the arguments of counsel on November 13, 2001, and reserved decision due to a new argument raised by the Plaintiffs at that time. The Court, having now had opportunity to fully consider the issues presented, renders the following decision.

## I. Background

### A. Facts

The facts of this case are largely undisputed. Inasmuch as these are cross-motions for summary judgment, where disputes exist, both versions of the facts will be given. Defendant Orkin contracted to treat the home in question for termite infestation. At the time of the original contract, the home was owned by the Stachettis who are not parties to this action. As a part of the treatment contract, the Stachettis were offered a Limited Lifetime Guarantee (the Guarantee). The Stachettis purchased the Guarantee, and it is undisputed that payments were always made. The Guarantee was transferred to Plaintiffs at the time they purchased the house from the Stachettis. Orkin was aware of and consented to the transfer. Orkin also provided an initial inspection at the time the Plaintiffs purchased the house.

When the Plaintiffs bought the house, there was evidence of prior infestation and treatment. Plaintiffs obtained an independent inspection by a company now owned by Orkin. Plaintiffs originally were told by the independent inspection company that there was active infestation, but then were told this was a typographical error, and that no active termites were present. The revised report stated that there was only evidence of past termite damage and treatment. Plaintiffs were advised at that time to obtain information regarding any guarantees provided by Orkin. Plaintiffs obtained the Guarantee and continued to pay the amounts due at all relevant times. At the Plaintiffs' initial inspection by Orkin, a form was filled out indicating that the house as built was treatable and that no inaccessible spaces existed. It is undisputed that the structure of the house has not changed.

After buying the house, the Plaintiffs discovered that each spring the house becomes infested with termites. The Plaintiffs called Orkin on numerous occasions to treat the house. It is undisputed that Orkin has sprayed the house on at least twenty occasions with a variety of chemicals beginning in 1991 and continuing through 2001. Despite these treatments, the termite problem continues to this day. At this time, Plaintiffs have sustained significant structural damage to their home. Indeed, it appears that the home is completely infested with termites and that nothing short of drastic measures will remedy the problem, if it can be remedied at all.

Recently, Orkin informed the plaintiffs that they would have to knock down walls and remove paneling in their finished basement in order for Orkin to properly treat the premises. Plaintiffs maintain that the initial inspection report mentioned nothing about the need to remove the paneling, despite it having been in place at the time, nor did it mention the other inaccessible spaces Orkin now points to.

Plaintiffs have obtained an expert who opines that despite promises by Orkin that they would treat the house with the best methods, including proper inspections, treatment was done piece-meal from the beginning. In particular, Plaintiffs' expert opines that an accessible crawl space was not inspected or treated prior to his pointing it out to Orkin. Defendants contend that there is an issue of fact as to whether this area was treated, and whether treatment would have prevented the damage that was done. It also appears that some of Orkin's own procedures were not followed in the treatment of this home. For instance, wooden stairs were allowed to maintain contact to the ground outside.

## B. The Guarantee

The Guarantee provided by Orkin to the Plaintiffs is at the heart of this matter. That Guarantee contains a limitation of liability clause which states:

> ORKIN's liability under this Guarantee is limited to re-treatment only. The Subterranean Termite Agreement expressly waives and releases ORKIN from liability for any damages to the structure or its contents occasioned by infestation of Subterranean Termites.

Consequently, Defendant maintains that the case should be dismissed because the action should be brought as contract, not tort, and that if any tort duty exists, the limitation of liability clause bars liability on the part of Orkin.

Plaintiffs respond: 1) that an independent duty exists because this is a professional service; 2) that the clause is not specific enough to bar a claim for negligence, or that it is barred by statute; and 3) that the clause is against public policy as it relates to gross negligence.

## II. DISCUSSION

### A. Standard

In determining the motion for summary judgment, the Court applies the well-settled standard for summary judgment as it has been laid out in prior cases. *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir.2000); *Roman v. Cornell Univ.*, 53 F.Supp.2d 223, 232–33 (N.D.N.Y.1999).

### B. Tort and Contract Liability

Defendant first contends that this action is one in contract and that Plaintiffs' claims should be dismissed because they essentially seek to assert a contract claim through the mechanism of a tort.

■ In order to state a tort claim, a plaintiff must allege that there is "a legal duty independent of contractual obligations" which is imposed by law as an incident of the parties' relationship. *THC Holdings Corp. v. Tishman*, 1998 WL 305639, at * 4 (S.D.N.Y.1998) (quoting *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992)). "Professionals, common carriers and bailees" are examples of those who are subject to tort liability for negligent performance of a contractual obligation. *Sommer*, 79 N.Y.2d at 550, 583 N.Y.S.2d 957, 593 N.E.2d 1365. In determining whether a tort obligation is present, the Court must consider the relationship of the parties, "the nature of the injury, the manner in which the injury occurred and the resulting harm." *Id.* at 551, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (citations omitted).

Plaintiffs allege that the manner in which Orkin applied the pesticide to its house was negligent. Plaintiffs point to their expert's opinion which discusses the lack of a comprehensive treatment plan and the unprofessional manner in which Orkin applied treatments to the house. The Court of Appeals has stated that:

> [t]he very nature of a contractual obligation, and the public interest in seeing it performed with reasonable care, may give rise to a duty of reasonable care in performance of the contract obligations, and the breach of that independent duty will give rise to a tort claim.

*New York University v. Continental Insurance Co.*, 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995).

■ Plaintiffs argue that because Orkin held itself out to be a professional, it is subjected to tort liability. Defendant counters that the issue is one of contract because it was providing a service, much like the provision of a good.

While these are factors to be considered, they are not determinative. The Court thus examines each of the factors laid out by the New York Court of Appeals in determining whether tort liability exists.

#### 1. Relationship of the Parties

The relationship between Orkin and the Plaintiffs was one of reliance. The plaintiffs, who possessed no expertise regarding termites, relied on Orkin's advice and treatment of their home. As the plaintiffs have pointed out, Orkin held itself out to be a reliable professional, capable of performing the job in a careful, professional manner. Thus, Orkin was obliged to use reasonable care, as it was clear, Plaintiffs were relying on Orkin to complete the treatment of their home with due care.

#### 2. Type of Activity

The type of activity involved required the use of reasonable care to be effective. No homeowner would pay to have treatment simply applied without any regard

for *how* the treatment would be applied. If that were the case, Plaintiffs could simply have done the treatment themselves.

### 3. The Resulting Injury

The injury resulting if due care was not used was potentially disastrous, as the termites were capable of destroying Plaintiffs' home. Thus, the injury would not be one merely to the product itself, as is the case when a good is purchased but does not perform as expected, but harm would result to the home of the plaintiffs as well.

All of the factors point to the existence of a duty independent and arising out of the contract. This Court will not be the first to find that a pest control company has a duty to use reasonable care sounding in tort. *See Tyler v. Dow Chemical Company, Inc.*, 252 A.D.2d 31, 34, 683 N.Y.S.2d 619 (3d Dep't 1998) (recognizing viable claim for negligently applying pesticide); *Popfinger v. Terminix International*, 251 A.D.2d 564, 674 N.Y.S.2d 769 (2d Dep't 1998) (declining to dismiss claim for negligently performing termite treatments). It is not for this Court to say whether the acts taken by Orkin were sufficient to constitute reasonable care. That is an issue for the jury. The Court finds, however, that Plaintiffs have articulated a duty sounding in tort.

### C. Limitation of Liability

Defendant next contends that the limitation of liability clause contained in the contract exempts it from the damages sought here. Plaintiff responds that the liability clause is not specific enough to exempt defendant's negligence in carrying out its duty, that the clause is void by statute, and that the clause is void as against public policy.

### 1. Sufficiently Definite

New York "law frowns upon contracts intended to exculpate a party from the consequences of his own negligence ..." *Gross v. Sweet*, 49 N.Y.2d 102, 106, 424 N.Y.S.2d 365, 400 N.E.2d 306 (1979). Absent a conflict with statute or public policy, however, such clauses will be enforced. *Sweet*, 49 N.Y.2d at 106, 424 N.Y.S.2d 365, 400 N.E.2d 306. In interpreting the reach of such clauses, they are strictly construed against the drafter. *Sweet*, 49 N.Y.2d at 106, 424 N.Y.S.2d 365, 400 N.E.2d 306. Consequently, a clause purporting to exempt a party for the consequences of its own negligence must state so clearly, in unambiguous, understandable terms. *See Abramowitz v. New York University Dental Center*, 110 A.D.2d 343, 345, 494 N.Y.S.2d 721 (2d Dep't 1985). Broad, sweeping language is insufficient to effect a release of liability for a party's own negligence. *Sweet*, 49 N.Y.2d at 106, 424 N.Y.S.2d 365, 400 N.E.2d 306.

The liability clause here specifically exempts damage done to the structure by termite infestation. The language of the clause is neither broad nor sweeping. It would not, for example, exempt Orkin for injury caused by the chemicals used. Nor does it require a "magnifying glass and lexicon" to understand its terms. *Sweet* at 106, 424 N.Y.S.2d 365, 400 N.E.2d 306. Although the clause does not specifically state that it exempts Orkin from liability for "negligence" or "fault," it does clearly exempt Orkin from damages caused by termites. The unambiguous language of the exculpatory clause must be upheld. *See Futterman v. West Shore Marina, Inc.*, 286 A.D.2d 367, 729 N.Y.S.2d 180, 181 (2d Dep't 2001) (clause exempting damage "due to storm" upheld as valid and enforceable).

### 2. General Obligations Law 5–323

██ Plaintiffs also contend[1] that the clause is void by operation of N.Y.GEN. OBLIG.L. § 5–323. That statute provides: Every covenant, agreement or understanding in or in connection with or collateral to any contract or agreement affecting real property made or entered into, whereby or where under a contractor exempts himself from liability for injuries to person or property caused by or resulting from the negligence of such contractor, his agent, servants or employees, as a result of work performed or services rendered in connection with the construction, maintenance and repair of real property or its appurtenances, shall be deemed to be void as against public policy and wholly unenforceable.

It does not appear that any New York court has had the opportunity to address whether a contract to perform some service to a house would qualify as a "maintenance" contract. The Court does note, however, that the statute was passed to ensure that those who contracted to install and maintain elevators and refrigeration systems would carefully perform maintenance on their products in order to protect the public. See St. Vincent's Medical Center of Richmond v. Vincent E. Iorio, Inc., 78 Misc.2d 968, 358 N.Y.S.2d 993, 996 (N.Y.Sup.Ct.Richmond Co.1974) (discussing legislative history). Consequently, New York courts have found that this provision does not apply when the contract does not involve a public interest. See, e.g., Florence v. Merchants Central Alarm Co., Inc., 51 N.Y.2d 793, 433 N.Y.S.2d 91, 412 N.E.2d 1317 (1980) (installation and maintenance of fire alarm not subject to statute); Colnaghi, U.S.A., Ltd. v. Jewelers Protection Services, Ltd., 183 A.D.2d 469, 583 N.Y.S.2d 427 (1st Dep't 1992)

(installation and maintenance of burglar alarm not covered); St. Vincent's Medical Center, 358 N.Y.S.2d at 996 (only construction and maintenance incidental to installation or servicing of appliances or equipment is covered by the statute).

██ Further, the plain language of the statute places its obligation on "contractors." Giving that word its ordinary meaning, Orkin would not be considered a contractor who either builds or maintains part of the real property in question, rather Orkin performed a service on the real property. See Novak v. Kasaks, 216 F.3d 300 (2d Cir.2000) (statutes should be given plain meaning); see also U.S. v. Pacheco, 225 F.3d 148 (2d Cir.2000) (first rule of statutory construction is to give words their plain, ordinary meaning).

Consequently, N.Y.GEN.OBLIG.L. § 5–323 does not apply to bar the limitation of liability clause in issue here. The clause is also sufficiently definite as to its exemptions. Thus, Plaintiffs are bound by the clause, and Orkin's liability for ordinary negligence that results in termite damage is limited to retreatment of Plaintiffs' home.

### 3. Gross Negligence and Public Policy

██ It is well established law in New York that limitations of liability purporting to cover gross negligence are void as a matter of public policy. Sweet, 49 N.Y.2d at 106, 424 N.Y.S.2d 365, 400 N.E.2d 306. Defendant urges this Court to apply the standard of Sommer v. Federal Signal Corp., 79 N.Y.2d 540, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992), in determining whether Plaintiffs have alleged gross negligence. Sommer, however, involved a commercial contract between two business

---

**1.** This argument was raised during the oral arguments. Inasmuch as it involved statutory construction the Court determined additional briefing was not necessary.

entities. In that case, the Court held that "gross negligence, when invoked to pierce an agreed-upon limitation of liability in a commercial contract, must 'smack[ ]' of intentional wrongdoing." *Sommer,* 79 N.Y.2d 540, 583 N.Y.S.2d 957, 593 N.E.2d 1365. It is clear here, however, that the clause was not one that was agreed upon after negotiations, rather it was a form contract with an adhesive clause. Nor is the contract between Orkin and the Anunziattas a commercial contract.

In *Gentile v. Garden City Alarm Co.,* the court enunciated the standard to be applied in determining gross negligence for purposes of invalidating an exculpatory clause in a consumer contract. *Gentile,* 147 A.D.2d 124, 541 N.Y.S.2d 505 (2d Dep't 1989). The court stated that the standard was a "failure to exercise even 'slight care' or 'slight diligence.'" *Id.* at 131, 541 N.Y.S.2d 505. The court went on to quote the New York Pattern Jury Instruction, "Gross negligence means a failure to use even slight care, or conduct that is so careless as to show complete disregard for the rights and safety of others." *Id.* at 131, 541 N.Y.S.2d 505 (quoting N.Y.P.J.I. 2:10A). No intentional wrongdoing is required.

 Plaintiffs have put forward evidence to meet this standard, and arguably the higher standard required of commercial contracts. In particular, Plaintiffs point to the lack of a plan to comprehensively treat the premises, the initial representations of Orkin that there were no inaccessible areas, and the later statements of Orkin that the premises could not be treated without the inaccessible areas being exposed. Further, Plaintiffs point to the failure of Orkin to treat the accessible crawl space until Plaintiffs' expert pointed it out to them. These circumstances, along with the testimony of Orkin personnel that wooden stairs leading to the house should have been cut off and the statements of Plaintiffs' expert that soil testing should have been done to ensure that the chemical treatment would be successful, are sufficient for Plaintiffs to meet their burden of going forward on the claim of gross negligence. Consequently, should a jury find gross negligence, the exculpatory provision would not apply as a matter of public policy.

### D. General Business Law Claims

Defendant's last contention is that Plaintiffs have failed to state a claim for violation of General Business Law §§ 349 and 350.

#### 1. Section 349

 In order to state a claim under N.Y.GenBus.L. § 349, a plaintiff must prove three elements. First, the challenged act must be consumer oriented. Second, that the act was misleading in a material way, and third, that the plaintiff suffered injury as a result of the act. *Stutman v. Chemical Bank,* 95 N.Y.2d 24, 28, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000). Reliance on the misrepresentation is not an element of the claim. *Id.* at 30, 709 N.Y.S.2d 892, 731 N.E.2d 608. Nor must the Plaintiff show repeated acts in order to claim that the conduct is consumer oriented. *Id.* at 30, 709 N.Y.S.2d 892, 731 N.E.2d 608.

 Defendant claims that the Plaintiffs cannot put forward evidence that it made a material misrepresentation. A material misrepresentation is made when a statement is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Stutman,* 95 N.Y.2d at 30, 709 N.Y.S.2d 892, 731 N.E.2d 608. The test is an objective one. *Id.* at 30, 709 N.Y.S.2d 892, 731 N.E.2d 608. Whether a representation is material and whether it is likely to mislead a reasonable consumer

may be determined as a matter of fact or law. *Conboy v. AT & T Corp.,* 84 F.Supp.2d 492, 506 (S.D.N.Y.2000) (citations omitted).

 It is clear from the submitted documents and inspection reports that Defendant represented to Plaintiffs that it was performing full and complete inspections of Plaintiffs' house and that there were no inaccessible areas. *See* Orkin Initial Inspection Report, Ex. "A" of Plaintiffs' Cross–Motion. Plaintiffs have put forward evidence that a comprehensive inspection did not occur. Banks Deposition p. 21–22. For instance, Plaintiffs have put forward evidence that one accessible crawl space was not inspected prior to Plaintiffs' expert pointing out this area to Orkin. Banks Deposition p. 32; Gohar Aff. ¶ 6, 9. Plaintiff also put forward evidence that despite Orkin's representations, a comprehensive treatment program was never developed. Banks 32–33; Gohar Aff. ¶ 6, 9. Plaintiffs have put forward evidence that even Orkin's normal procedures were not followed. For instance, the wooden stairs were not cut off. Banks Deposition p. 21.

It is also clear, by Orkin's own admission, that there were numerous areas of the house that were not accessible, despite Orkin's initial representations to the Plaintiffs that no inaccessible areas existed. *See* letters from Orkin, Ex. "11" & "12" of Defendant's Motion. In particular, Orkin now claims that an inaccessible crawl space and the area behind the finished basement paneling are problem areas, yet Orkin represented to the plaintiffs that no inaccessible problem areas existed at the time of the original contract. None of the structure or design of the house have been changed since the Plaintiffs moved into the house and the initial inspection was performed by Orkin. Yet at the initial inspection, Plaintiffs were told there were no inaccessible areas. Thus, Plaintiff has put forward evidence of misrepresentations by Orkin.

Further, a jury could determine that a reasonable consumer would have relied on Orkin's representations that the house, as it initially stood, was treatable. Nothing in Orkin's initial report to Plaintiffs indicated that Plaintiffs would be asked to essentially destroy their entire finished basement in order to treat for termites. Orkin's representations could have led a reasonable consumer to believe that it was treating Plaintiffs' home with the best possible methods after a thorough investigation. A jury could find that it was reasonable for the Plaintiffs to expect as much. Consequently, the cross-motions for summary judgment as to Plaintiff's General Business Law 349 claim are denied as issues of fact exist.

### 2. Section 350

 In order to state a claim under Gen.Bus.L. § 350, the plaintiffs must prove that the advertising was "misleading in a material respect" and that it caused the plaintiffs' injury. *Karlin v. IVF America, Inc.,* 93 N.Y.2d 282, 290, 690 N.Y.S.2d 495, 712 N.E.2d 662 (1999).

 Plaintiffs have attached a number of advertisements by Orkin in purported support of this claim. While these advertisements discuss the exclusive techniques of Orkin and tout Orkin's expertise in the removal of various household pests, such as rats, spiders, ants, and mice, none of them make a "material" misstatement. There are no statements regarding Orkin's success rate in removing the various pests from people's homes. *Compare Karlin,* 93 N.Y.2d at 290, 690 N.Y.S.2d 495, 712 N.E.2d 662 (statistics given as to success in procedures were artificially inflated). Notably, the advertisements provided to the Court do not even address the issue of this case, termite infestations. Without

advertisements related to the issue at hand, it is impossible to see how advertisements related to other pests caused Plaintiffs' injury with termites. Consequently, Plaintiffs have failed to state a claim for false advertising under GEN.BUS.L. § 350.

## III. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in part and DENIED in part. It is GRANTED as to Plaintiffs' claims of negligence and violations under General Business Law Section 350. These claims are dismissed with prejudice. It is DENIED in all other respects. Plaintiffs' cross motion for summary judgment is DENIED as there are material issues of fact.

**IT IS SO ORDERED**